Larry Grant BOWRING, Appellant,

v.

Mills E. GODWIN, Individually and as Governor, et al., Appellees.

No. 75–2084.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 8, 1976.

Decided March 18, 1977.

---

Paul Mark Sandler, Baltimore, Md. (Richard C. Burch and William Kiniry, Jr., Third Year Law Students on brief), for appellant.

Linwood T. Wells, Jr., Asst. Atty. Gen., Richmond, Va. (Andrew P. Miller, Atty. Gen., Richmond, Va., on brief), for appellees.

Before WINTER, CRAVEN and BUTZNER, Circuit Judges.

WINTER, Circuit Judge:

In *pro se* pleadings, petitioner, incarcerated under state law, attacked the validity of the denial of his application for parole. *In-*ter alia, he sought psychiatric and psychological treatment to render him eligible for parole. The district court treated the action as one under 42 U.S.C. § 1983, and summarily dismissed it on the ground that petitioner had alleged no denial of any constitutional right. We reverse.

## I.

Petitioner, Larry Grant Bowring, was convicted on charges of robbery, attempted robbery and kidnapping in the Circuit Court of the City of Roanoke and sentenced to prison terms of nine, five and nine years, respectively. While incarcerated in the Virginia state prison system, Bowring filed *pro se* pleadings, claiming the deprivation of constitutional rights secured by the Eighth and Fourteenth Amendments. He alleged that he became eligible for parole but parole was denied him by the Probation and Parole Board on three grounds: (1) the nature of the crimes he committed; (2) his work and conduct while incarcerated; and (3) the results of a psychological evaluation indicating that "Bowring would not successfully complete a parole period." In light of the third ground, Bowring maintains that the state must provide him with psychological diagnosis and treatment in the hope that he may ultimately qualify for parole. He further maintains that the failure to provide such diagnosis and treatments constitutes "cruel and unusual punishment" and a denial of "due process of law."

## II.

Concomitant with the general philosophy that "[t]here is no iron curtain drawn between the Constitution and the prisons of this country," *Wolff v. McDonnell*, 418 U.S. 539, 555–56, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974), prisoners are guaranteed the provision of life's basic necessities for the period of their confinement. Constitutional doctrine has absorbed the common law view that "[i]t is but just that the public be required to care for the prisoner, who cannot, by reason of the deprivation of his liberty, care for himself." *Spicer*

*v. Williamson*, 191 N.C. 487, 490, 132 S.E. 291, 293 (1926). Federal courts, though reluctant to intervene in the daily operation of penal institutions, have required those institutions to provide adequate food, clothing and shelter for their charges.[1] Additionally (and most important for purposes of this appeal), they have required the provision of reasonable medical care, as needed. *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Fitzke v. Shappell*, 468 F.2d 1072, 1076 (6 Cir. 1972); *United States v. Fitzgerald*, 151 U.S.App.D.C. 206, 466 F.2d 377, 380 n. 6 (1972); *Ramsey v. Ciccone*, 310 F.Supp. 600, 605 (W.D.Mo.1970). Failure or refusal to provide treatment, when indicating a "deliberate indifference to serious medical needs of prisoners" results in "the 'unnecessary and wanton infliction of pain,' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). Such conduct also violates the Fourteenth Amendment "due process" clause, since the failure or refusal to treat " 'could well result in the deprivation of life itself.' " *Fitzke v. Shappell*, 468 F.2d 1072, 1076 (6 Cir. 1972), quoting from *McCollum v. Mayfield*, 130 F.Supp. 112, 115 (N.D.Cal.1955). This circuit has consistently adhered to the prevailing view in requiring reasonable medical treatment. *Russell v. Sheffer*, 528 F.2d 318 (4 Cir. 1975); *Blanks v. Cunningham*, 409 F.2d 220, 221 (4 Cir. 1969); *Hirons v. Director*, 351 F.2d 613, 614 (4 Cir. 1965).

■ In the instant case, petitioner seeks psychological diagnosis and treatment. We see no underlying distinction between the right to medical care for physical ills and its psychological or psychiatric counterpart. Modern science has rejected the notion that mental or emotional disturbances are the products of afflicted souls, hence beyond the purview of counseling, medication and therapy. At least one Court of Appeals has considered psychological care in testing the constitutional validity of systemwide conditions of confinement. In *Newman v. Alabama*, 503 F.2d 1320 (5 Cir. 1974), *cert. denied*, 421 U.S. 948, 95 S.Ct. 1680, 44 L.Ed.2d 102 (1975), the Fifth Circuit criticized the Alabama penal system for substandard medical care and total disregard of personal hygiene. The court also noted that

despite an estimate . . . that approximately one-third of the inmate population suffers from mental retardation, and an assessment . . . that 60 percent of the inmates are disturbed enough to require treatment, the APS provides only nominal assistance to mentally ill inmates. . . . No psychiatrists, social workers or counsellors were employed in the system. Additionally, obstreperous inmates were often placed in the general population and when finally removed, left unattended in lockup cells not equipped with restraints.

*Id.* at 1324. The court went on to find that the acts and omissions of the Alabama penal system constituted violations of both the Eighth and the Fourteenth Amendments. *Id.* at 1330.

■ We therefore hold that Bowring (or any other prison inmate) is entitled to psychological or psychiatric treatment if a physician or other health care provider, exercising ordinary skill and care at the time of observation, concludes with reasonable medical certainty (1) that the prisoner's symptoms evidence a serious disease or injury; (2) that such disease or injury is curable or may be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or the denial of care would be substantial. The right to

---

1. In at least five states, federal courts have ordered wholesale improvements in prison diet, sanitation, clothing supply, allocation of living space, and maintenance of physical plant. *Pugh v. Locke*, 406 F.Supp. 318 (M.D.Ala. 1976); *Inmates of Suffolk County Jail v. Eisenstadt*, 360 F.Supp. 676 (D.Mass.1973), *aff'd*, 494 F.2d 1196 (1 Cir. 1974), *cert. denied sub nom.*, *Hall v. Inmates of Suffolk County Jail*, 419 U.S. 977, 95 S.Ct. 239, 42 L.Ed.2d 189 (1974); *Gates v. Collier*, 349 F.Supp. 881 (N.D.Miss.1972), *aff'd*, 501 F.2d 1291 (5 Cir. 1974); *Collins v. Schoonfield*, 344 F.Supp. 257 (D.Md.1972); *Holt v. Sarver*, 309 F.Supp. 362 (E.D.Ark.1970), *aff'd*, 442 F.2d 304 (8 Cir. 1971).

treatment is, of course, limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable.

 This limited right to treatment stems from the Eighth Amendment, whose language must be interpreted in light of "the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958). It is also premised upon notions of rehabilitation and the desire to render inmates useful and productive citizens upon their release.[2]

### III.

 In so holding, we disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment.[3] Along with all other aspects of health care, this remains a question of sound professional judgment. The courts will not intervene upon allegations of mere negligence, mistake or difference of opinion. *Russell v. Sheffer*, 528 F.2d 318, 319 (4 Cir. 1975); *Thomas v. Pate*, 493 F.2d 151, 158 (7 Cir.), *cert. denied sub nom., Thomas v. Cannon*, 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119 (1974); *Jones v. Lockhart*, 484 F.2d 1192, 1194 (8 Cir. 1973); *Corby v. Conboy*, 457 F.2d 251, 254 (2 Cir. 1972). For a constitutional tort to arise and for a cause of action to be stated under § 1983, the complainant must allege deliberate indifference to his continued health and well-being.

 Our statements with regard to a prisoner's right to psychological or psychiatric treatment are, of course, based on the

---

**2.** It has been widely recognized that rehabilitation is one of the primary purposes and goals of incarceration, although it is not mandated by any provision of the Constitution. *See, e. g., Pell v. Procunier*, 417 U.S. 817, 823, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974); *United States v. Brown*, 381 U.S. 437, 458, 85 S.Ct. 1707, 14 L.Ed.2d 484 (1965); *Williams v. New York*, 337 U.S. 241, 248, 169 S.Ct. 1079, 93 L.Ed. 1337, *rehearing denied*, 337 U.S. 961, 69 S.Ct. 1529, 93 L.Ed. 1760, *rehearing denied*, 338 U.S. 841, 70 S.Ct. 34, 94 L.Ed. 514 (1949); *Rudolph v. Alabama*, 375 U.S. 889, 891, 84 S.Ct. 155, 11 L.Ed.2d 119 (Goldberg, J., dissenting); *Anderson v. Nosser*, 438 F.2d 183, 190 (5 Cir. 1971), *modified on rehearing in banc*, 456 F.2d 835 (1972), *cert. denied*, 409 U.S. 848, 93 S.Ct. 53, 34 L.Ed.2d 89 (1972); *Benson v. United States*, 332 F.2d 288, 292 (5 Cir. 1964); *Jackson v. Bishop*, 404 F.2d 571, 580 (8 Cir. 1968).

The Fifth Circuit finds that deficiencies in health care and hygiene (including the provision of nominal psychological treatment) foster inmate frustration and resentment. These emotions, in turn "thwart[s] the purported goal of rehabilitation," and "jeopardize[s] the ability of inmates to assimilate into the population at large when ultimately released." *Newman v. Alabama*, 503 F.2d 1320, 1333 (5 Cir. 1974), *cert. denied*, 421 U.S. 948, 95 S.Ct. 1680, 44 L.Ed.2d 102 (1975). We agree with this proposition and note that it takes on added meaning when psychological illness (arguably traced to a failure or refusal to treat) becomes the ground for the denial of release itself (*i. e.*, parole).

**3.** Although it is possible to categorize some forms of mental illness, diagnosis remains "an extremely subjective art." In addition, psychiatrists themselves differ on the underlying theories (hence methodologies) of treatment. *See* Developments in the Law—Civil Commitment, 87 Harv.L.Rev. 1190 1335 nn. 84–85 (1974). We note that in the civil commitment process (where treatment is often the reason for confinement rather than its byproduct), at least one district court has utilized this uncertainty to reject a constitutionally based right to treatment. *Burnham v. Dep't of Public Health of the State of Georgia*, 349 F.Supp. 1335, 1341–43 (N.D.Ga.1972), *rev'd*, 503 F.2d 1319 (5 Cir. 1974), *cert. denied sub nom., Dep't of Human Resources of Georgia v. Burnham*, 422 U.S. 1057, 95 S.Ct. 2680, 45 L.Ed.2d 709 (1975). The district court opinion was subsequently reversed by the Fifth Circuit on the authority of its decision in *Donaldson v. O'Connor*. The latter decision, in turn, was vacated and remanded by the Supreme Court. *Donaldson v. O'Connor*, 493 F.2d 507 (5 Cir. 1974), *vacated and remanded*, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975).

Since the instant appeal deals with criminal incarceration, we express no opinion on the related issue of treatment in cases of civil commitment. However, we note our fundamental disagreement with the approach taken by the district court in *Burnham*. Although courts are ill-equipped to prescribe the techniques of treatment, this does not alter the fact that in many cases treatment is obviously called for and is available in some form. In such cases, the state cannot arbitrarily refuse to provide relief. The exact contours of relief should be left to the sound discretion of experts in the field.

supposition that the requisite form of mental illness does in fact exist. In the instant case, that fact is not yet established. Petitioner is therefore not yet entitled to relief. The starting point for a determination of whether he is entitled to treatment is an evidentiary hearing in the district court to determine if the prisoner is indeed suffering from a "qualified" mental illness as we have defined it. If the answer is in the affirmative, the court shall order that appropriate action be taken by the prison authorities. We reverse the district court's judgment and remand the case for further proceedings in accordance with what is said herein.

*REVERSED AND REMANDED.*