Nathan BROWN, Vincent Bellamy, Bobby Reid, and Pamela Searcy, Plaintiffs,

v.

James G. BECK, A. B. Williams, Harrell S. Tiller, E. M. McIntyre, Travis Barnes, Barbara Scott and Donald Neal, Defendants.

Civ. A. No. 177–56.

United States District Court, S. D. Georgia, Augusta Division.

Jan. 9, 1980.

Martha A. Miller, Robert W. Cullen, Augusta, Ga., John L. Cromartie, Jr., Atlanta, Ga., for plaintiffs.

Arthur K. Bolton, Atty. Gen., Kirby G. Atkinson, Asst. Atty. Gen., Atlanta, Ga., Roy V. Harris, Stanley G. Jackson, Robert C. Daniel, Jr., Augusta, Ga., for defendants.

## ORDER

BOWEN, District Judge.

The captioned case was begun by the filing of a complaint on behalf of the plaintiffs, and all others similarly situated, on April 28, 1977. Subsequently, this case was certified by the Court as a class action, and sub-classes have been established.

After a year's litigation and negotiation, a consent order was entered by the Court on May 2, 1978. The issues involved in this case relate to the conditions at the Richmond County Jail in Augusta, Georgia. Various violations of the constitutional rights of pre-trial detainees and jail inmates have been raised, and are treated by the consent order. One area with which the consent order and the case deal is that of the medical care and health programs afforded to jail inmates.

This particular contested matter was begun by the December 28, 1979 filing of a motion for an order to show cause why a judgment of contempt should not be entered. A hearing on the plaintiff's motion was conducted by the Court on January 2, 1980. Only the first defendants (the Sheriff of Richmond County and the members of the Board of County Commissioners), are involved in this proceeding. The aforementioned defendants were served with a copy of the plaintiff's motion; the Department of Offender Rehabilitation (second defendant) was not served.

The allegations of the motion are supported by the affidavit of one Juan Sandoval. The facts found by the Court at the hearing were undisputed. These are stated sequentially as follows:

(1) That Juan Sandoval is an alien residing illegally in the United States of America, and is a citizen of Mexico;

(2) That Mr. Sandoval suffered a head injury and received some treatment therefor in March of 1979, prior to his arrest and incarceration in Richmond County;

(3) That the medical treatment or surgery received by Mr. Sandoval prior to his incarceration left at least one trephine opening in his skull. This opening was covered by scalp, was left intentionally after surgery, and did not present any serious danger or disability to Mr. Sandoval;

(4) After being arrested on a burglary charge in Richmond County, Georgia, Mr. Sandoval was incarcerated in the Richmond County Jail on August 6, 1979;

(5) Although there is a discrepancy between the symptoms related at the hearing by the jail physician, Dr. Louis Scharff, and the symptoms which Mr. Sandoval recounts in his affidavit, these are considered to be of little importance in this decision. Because of Mr. Sandoval's absence at the hearing and the inability of the plaintiff's counsel to obtain his presence for the hear-

ing, the symptoms which Mr. Sandoval recounts in his affidavits are, for the purpose of this decision and order only, assumed to be genuine. These symptoms include dizziness, loss in hearing, some pain, and the hearing of a rushing noise in one ear;

(6) While incarcerated, Mr. Sandoval reported to the jail sick call and was seen on several occasions by Dr. Scharff, the jail nurse, and was, at least on two occasions, sent out to see a dentist. Medical records are maintained by the jail physician and the nurse. A copy of Sandoval's medical record has been introduced in evidence without objection. This record recounts the dates of the visits to the physician and nurse and, with Dr. Scharff's testimony, require the finding that Mr. Sandoval was adequately, if not thoroughly, examined and treated each time he made a medical complaint in proper fashion to the jail authorities;

(7) The charge of burglary against Mr. Sandoval was reduced to one of criminal trespass on December 10, 1979, and he was sentenced on December 20. The sentence imposed was for the time which he had already served;

(8) After his sentence was imposed by the State Court of Richmond County, Mr. Sandoval was eligible for release from the Richmond County Jail but for the "hold" placed on him with the jail authorities by the United States Immigration and Naturalization Service;

(9) Sometime during December, 1979, Mr. Sandoval made a complaint to the Georgia Legal Services Association, counsel for the plaintiffs in this case, and the motion for contempt was made on the basis of his affidavit. Basically, Mr. Sandoval and plaintiff's counsel urged that proper medical treatment would require the surgical introduction of steel plates under his scalp to cover the trephine hole in his skull bones. The motion and affidavit state that Mr.

Sandoval's complaints have been ignored by jail medical personnel;

(10) Mr. Sandoval has been removed from the Richmond County Jail by the United States Immigration and Naturalization Service, thus causing the inability of plaintiff's counsel to have him present for the January 2, 1980, hearing;

(11) Mr. Sandoval's injury was not at all related to his confinement in the Richmond County Jail, the surgery requested by him would involve substantial expense which he is unable to pay, and his condition did not constitute a serious medical need requiring immediate treatment.

 Upon the foregoing facts found by the Court, a decision will turn upon the absolute constitutional requirements for medical treatment of prisoners incarcerated by a government, as well as those guidelines for medical treatment which are set forth in the consent order which is the law of this case. Neither body of law would require or permit a decision in favor of the plaintiffs on this motion. Quite to the contrary, it appeared that the Sheriff and other jail personnel, including the nurse and physician, have afforded Mr. Sandoval more than adequate medical treatment. The question of whether the Sheriff and the County Commissioners have obtained the certification from the American Medical Association required under the consent order is not an issue at this time. The exhibit attached to the consent order deals with sick calls and medical treatment of ill prisoners.[1]

Currently, the Court views the medical treatment to be afforded to prisoners in the Richmond County Jail to be that which is required under basic humanitarian principles and constitutional precedent. The constitutional test of treatment to be afforded to prisoners is set out in *Estelle v. Gamble*

---

1. Part IV provides, in pertinent part: "*Medical Services*; (1)(a) A sick call will be conducted by the jail doctor each Monday, Tuesday, Thursday and Friday morning between 7:00 a. m. and 9:00 a. m. (b) A physician will be on call at all times. (c) Inmates who need emergency treatment will be taken to the University Hospital. (d) All complaints of illness or injury shall be reported in the medical log maintained by the jail doctor. The medical log shall record the action taken on each complaint and the treatment prescribed, if any." Consent Order of May 2, 1978, Exhibit A.

(1976), 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251, *rehearing denied*, 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785.[2] Medical treatment, however, must also be afforded to prisoners at the Richmond County Jail in the manner and under the sick call schedules which are set forth in the consent order. The Court finds no evidence of any failure on the part of jail officials to observe the sick call schedules. Rather, it appears that Mr. Sandoval was afforded relatively free access to the nurses, the physician, and dental facilities available to him because of his incarceration. Whether or not Mr. Sandoval was afforded the best of all medical treatment is not an issue nor is it particularly relevant. There was discussion of x-ray treatment or diagnosis at the hearing. " . . . but the question whether an x-ray—or additional diagnostic techniques or forms of treatment—is indicated is a classic example of a matter for medical judgment". *Estelle v. Gamble*, 429 U.S. 97, 107, 97 S.Ct. 285, 293, 50 L.Ed.2d 251.

■ While " . . . deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . ", *Estelle v. Gamble, supra*, at 104, 97 S.Ct. at 291, " . . . a medical decision not to order an x-ray or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court . . " *Estelle v. Gamble, supra*, at 107, 97 S.Ct. at 293. The Court does not intend any inference that any medical malpractice occurred. The point is that prisoners are entitled to reasonable and necessary medical treatment while incarcerated. The test for application

of medical treatment is expressed in detail in *Bowring v. Godwin* (1971), 551 F.2d 44.[3]

There is nothing in the evidence of this case to indicate that the prisoner's symptoms indicated a "serious disease or injury." There is nothing to indicate a substantial risk or potential for harm. And, there is nothing to indicate the exercise of anything but ordinary or better care by any physician or health provider. Thus, the motion for contempt, based as it is upon inadequate or unconstitutional medical care afforded to the prisoner, Juan Sandoval, must fail.

■ It is not required that the medical care provided to a prisoner be perfect, the best obtainable, or even very good. The question is whether the care was given in accordance with the rules for guidance existing in the Richmond County Jail, the consent order, and constitutional principles laid down by the Supreme Court. Applying the proper tests outlined in the *Estelle* and *Bowring* cases, the Court finds no basis whatsoever on which to grant the motion for contempt, or for any other complaint on behalf of Mr. Sandoval or the plaintiff class.

Appropriate instructions were given by the Court to counsel to prevent the future filing of actions such as this without first notifying the defendants of the existence of the complaints. A copy of a portion of the transcript of the hearing which includes those instructions is filed with this order.

Accordingly, upon the foregoing findings of fact and conclusions of law, the motion for a judgment or citation of contempt against the Sheriff of Richmond County and the commissioner defendants is DENIED.

---

2. Prison staff may not treat prisoners with deliberate indifference to serious medical needs or otherwise cause unnecessary and wanton infliction of pain. *Estelle v. Gamble*, (1976) 429 U.S. 97, 104–107, 97 S.Ct. 285, 50 L.Ed.2d 251.

3. By that holding, medical treatment is required when " . . . a physician or other health care provider, exercising ordinary skill and care at the time of observation, concludes with reasonable medical certainty (1) that the

prisoner's symptoms evidence a serious disease or injury; (2) that such disease or injury is curable or may be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or the denial of care would be substantial. The right to treatment is, of course, limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." 551 F.2d at 47–48.

FURTHER ORDERED that no fees or costs shall be awarded or paid to plaintiff's counsel for any time or expenses incurred in the formulation, preparation, filing or prosecution of this motion.

FURTHER ORDERED that a copy of this order shall be served upon counsel for all parties by the mailing of such copies by certified mail, return receipt requested, and that such service may be had upon the certificate of the Clerk of Court or the United States Marshal.

SO ORDERED at Augusta, Georgia, this 9th day of January, 1980.