876 F.2d 104
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Michael LAY, Plaintiff-Appellee,
v.
Stephen NORRIS, Defendant-Appellant.
 No. 88-5757.
 United States Court of Appeals, Sixth Circuit.
 June 13, 1989.
 
 Before MILBURN, Circuit Judge, CELEBREZZE, Senior Circuit Judge, and WILLIAM O. BERTELSMAN, District Judge*.
 PER CURIAM.
 
 
 1
 This is an appeal from a judgment for injunctive relief entered by the district court against defendant-appellant Stephen Norris, Commissioner, Tennessee Department of Correction, on the ground that the defendant had shown deliberate indifference to the mental health needs of plaintiff-appellee Michael Lay, a Tennessee state inmate. For the reasons that follow, we affirm the judgment of the district court.
 
 I.
 
 2
 Lay commenced this action by filing his pro se complaint on June 19, 1987. He alleged violations of his Eighth and Fourteenth Amendment rights in what he claimed was Norris' deliberate indifference to his need for mental health treatment. On January 28, 1988, the district court referred this matter to the magistrate to hold an evidentiary hearing and issue a report and recommendation of disposition. On May 5, 1988, the magistrate conducted a hearing with all parties present.
 
 
 3
 On May 9, 1988, the magistrate issued a report and recommendation finding Norris had been deliberately indifferent to Lay's need for mental health treatment. The magistrate recommended an injunction be granted to compel Norris to provide Lay with mental health treatment. Norris objected to the magistrate's report. On June 6, 1988, the district court adopted the magistrate's recommendations and granted the injunction in Lay's favor. This timely appeal followed.
 
 
 4
 Lay was born on March 18, 1961, and is now serving an eight-year sentence for aggravated assault on his infant daughter. At the time he filed his complaint, he was incarcerated at Morgan County Regional Correctional Facility in Wartburg, Tennessee ("Morgan County").
 
 
 5
 Lay has a troubled personal history. He was physically and sexually abused as a child, and his parents were divorced when he was twelve. When he was eighteen and living with his mother, she committed suicide. He had considerable difficulty in public schools, and his adolescence was marked by alcohol and drug abuse. As an adult, he is functionally illiterate.
 
 
 6
 In 1981, he was convicted of child abuse in connection with his beating of his infant son. Lay served a fifteen-month sentence in the Campbell County jail for that offense. He was subsequently divorced and remarried. His second marriage produced an infant daughter. On October 24, 1986, he was convicted of aggravated assault resulting from a beating he inflicted upon his daughter when she was four months old.[1]
 
 
 7
 Lay asserts he has serious mental problems, not the least of which is extreme depression, and despite his many requests for some type of treatment, Tennessee prison officials have been deliberately indifferent to his needs. During his incarceration in Morgan County, he was examined by several mental health professionals, including a psychiatrist and at least three psychologists. Lay saw none of these health professionals regularly, because they work for the Overlook Mental Health Center in Knoxville, Tennessee, which provides a minimum number of hours of services to the prison. Although one psychologist from the center visits the prison more often than others, there is no specific person who regularly treats the inmates.
 
 
 8
 David Newberry, the Assistant Warden for Treatment at Morgan County, testified that Lay received the maximum amount of treatment inmates could be provided at that facility. But he testified that the maximum amount of treatment available to any one inmate at Morgan County was very little, as the facility's contract with the Overlook Center provides for six hours per week of a psychologist's time and six hours per month of a psychiatrist's time. These thirty hours of services are divided among the prison's 814 inmates. Newberry further testified the psychologists and psychiatrists spend most of their time preparing inmates for parole board hearings, and the time left over for inmates like Lay is minimal.
 
 
 9
 Lay was on regular medication at Morgan County and, therefore, had his case and dosage levels reviewed periodically by a psychiatrist. He eventually and voluntarily discontinued his medication, however, because the state would not transfer him to an institution where he could receive more individualized mental health treatment unless he was free of regular medications.
 
 
 10
 Lay voluntarily remained in administrative segregation throughout his stay at Morgan County. Inmates who do this can request to see a psychologist or other mental health professional at any time. But as Lay's experience shows, requesting to see a psychologist did not mean an inmate would ever see one, or for very long. There is no psychologist on the staff at the Morgan County facility, and funds for psychological examiners have been lost to budget cuts. The Overlook Center psychiatrists and psychologists who examined Lay, including Liz Donald, a clinical psychologist, all recommended that he be transferred to the DeBerry Correctional Institute ("DCI"), the state's facility for offenders with mental health and sexual abuse problems, in order that he could begin receiving mental health treatment.
 
 
 11
 Lay requested to be reclassified (transferred) to DCI in August 1987. But as Morgan County officials testified, the waiting list of inmates seeking reclassification to DCI is long, and turnover at that facility is very low. The result is that inmates scheduled for "routine" transfers have "nil" chances of ever actually going to DCI. In fact, Morgan County prison officials testified that in the year prior to Lay's hearing, they had placed only three or four inmates at DCI, and those on an "emergency" basis. However, the wait for "emergency" cases of suicidal or assaultive inmates is three to four months.
 
 
 12
 By October 1987, after prison officials explained to Lay that he had no chance of getting to DCI, he asked to be reclassified to the Carter County Work Camp. He hoped that facility might at least have a staff psychologist. His reclassification to Carter County resulted in his removal from the DCI transfer list, as state policy allows inmates to occupy only one reclassification list at a time.
 
 
 13
 Lay later asked to be transferred to the Lake County Regional Correctional Facility in Tiptonville, Tennessee. Since entry of the final order in this case, he has been transferred to Lake County. The parties dispute whether the Lake County facility has a staff psychologist.
 
 
 14
 The magistrate took note of Lay's personal history and that from his first day in prison, he had sought treatment. In his report and recommendation, the magistrate referred to the five reports filed by two psychologists who had interviewed Lay at Morgan County. Each report urged that Lay needed to be transferred to DCI to begin mental health treatment as soon as possible. Noting the only treatment available at Morgan County was provided by part-time psychologists and psychiatrists, the magistrate found:
 
 
 15
 In any event, plaintiff's [Lay's] medical records make it abundantly clear that he is not getting any treatment for the mental health condition which he has. Maintaining him on drugs is not providing treatment.
 
 
 16
 The magistrate also found that delay or denial of treatment could arouse Lay's prior suicidal tendencies, and he would likely pose a danger to children if he were released without treatment.
 
 
 17
 The magistrate concluded that Norris had violated Lay's Eighth Amendment right to protection from cruel and unusual punishment. The magistrate, however, hesitated in recommending that the district court order Lay be placed at DCI for fear of displacing another needy inmate. Instead, he recommended that the district court enter an injunction against Norris, enjoining him from further violations of Lay's rights and ordering him to provide mental health treatment.
 
 
 18
 In an order entered on June 6, 1988, the district court agreed with the magistrate that "[t]here is no question that the plaintiff has a serious mental health problem and that he is receiving no treatment whatsoever." The district court accepted the magistrate's conclusion that a failure to provide Lay with treatment could trigger his prior suicidal tendencies in addition to posing "potential harm to children in general if this treatment is not given before he is released." The district court ordered Norris to provide Lay with appropriate treatment "as long as his serious mental health condition lasts or as long as he remains in state custody."
 
 
 19
 This appeal presents the question of whether the district court erred in finding Norris has been deliberately indifferent to Lay's need for mental health treatment.
 
 II.
 
 20
 The magistrate and district court concluded the lack of mental health treatment for Lay amounted to "cruel and unusual punishment" in violation of the Eighth Amendment. This conclusion of law is subject to de novo review upon appeal. Loudermill v. Cleveland Bd. of Educ., 844 F.2d 304, 308 (6th Cir.), cert. denied, 109 S.Ct. 363 (1988).
 
 
 21
 Inmates' complaints of inattention to their medical needs are evaluated according to Estelle v. Gamble, 429 U.S. 97 (1976). See Molton v. City of Cleveland, 839 F.2d 240, 243 (6th Cir.1988), cert. denied, 109 S.Ct. 1345 (1989).
 
 
 22
 [A] prison official's deliberate indifference to the serious medical needs of inmates amounts to cruel and unusual punishment, and violates the eighth amendment. To sustain such a claim, it is not necessary that the prison officials consciously sought to inflict pain by withholding treatment; it is sufficient to show deliberate indifference to an inmate's serious medical needs.
 
 
 23
 Molton, 839 F.2d at 243 (citing Westlake v. Lucas, 537 F.2d 857, 860 n. 3 (6th Cir.1976)).
 
 
 24
 In Estelle, the Supreme Court cautioned courts to bear in mind the difference between claims of inadequate medical care and claims of deliberate indifference, for only the latter raise constitutional questions. Estelle, 429 U.S. at 105.
 
 
 25
 Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.
 
 
 26
 Id. at 106 (quoting Trop v. Dulles, 356 U.S. 86, 101 (1958)).
 
 
 27
 The state's obligation to provide medical services to inmates arises in part because the state has deprived them of the liberty to care for themselves, DeShaney v. Winnebago County Dep't of Social Servs. 109 S.Ct. 998, 1005 (1989), and in part because deliberate indifference to medical needs of inmates constitutes "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104 (quoting Gregg v. Georgia, 428 U.S. 153, 182-83 (1976) (joint opinion of Stewart, Powell and Stevens, J.J.)). States must provide inmates "with medically necessary mental health treatment." Grubbs v. Bradley, 552 F.Supp. 1052, 1123 (M.D.Tenn.1982) (citing Woodall v. Foti, 648 F.2d 268, 272 (5th Cir.1981)); Bowring v. Godwin, 551 F.2d 44, 47 (4th Cir.1977).
 
 
 28
 Norris first argues the district court's conclusion that Lay is receiving "no treatment whatsoever" is clearly erroneous, and the treatment and attention Lay has received far exceeds the standard of Estelle. Norris argues Lay has been seen on numerous occasions by mental health professionals, he has been examined by different psychologists, and he has received daily visits from licensed nurses. We find these contentions meritless.
 
 
 29
 The record makes obvious the fact that the psychologists, whose very visits Norris touts as "treatment," all diagnosed Lay as being in dire need of mental health treatment and urged that he be transferred to DCI to begin receiving treatment as soon as possible. Obviously the state's psychologists, like the magistrate and the district court, did not agree with Norris' assertion that feeding Lay a steady stream of psychotropic drugs constituted "treatment." Furthermore, while Norris asserts Lay's "treatment" also included daily visits from nurses, there is no indication anywhere in the record that the nurses did anything but distribute drugs. Moreover, nurses are not mental health care professionals, and even the most generous of imaginations could not construe their daily visits as "treatment."
 
 
 30
 Norris also places great weight on the fact that Lay could request to see a psychologist or a psychiatrist at any time. But the Morgan County wardens testified that the Overlook Center psychologists and psychiatrists devoted the vast majority of their part-time work to preparing inmates for parole hearings. Consequently, they had virtually no time for inmates like Lay. At best, Lay received psychological and psychiatric "attention," but that is a far cry from the therapy and counseling the state's own examiners urged the state to provide.
 
 
 31
 Norris relies heavily on the reasoning in Bowring v. Godwin, 551 F.2d 44 (4th Cir.1977). There, the Fourth Circuit attempted to formalize the "deliberate indifference" standard of Estelle in a three-factor test which finds prisoners entitled to mental health treatment
 
 
 32
 if a physician or other health care provider, exercising ordinary skill and care at the time of observation, concludes with reasonable medical certainty (1) that the prisoner's symptoms evidence a serious disease or injury; (2) that such disease or injury is curable or may be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or the denial of care would be substantial.
 
 
 33
 Id. at 47.
 
 
 34
 While we see no need to adopt the Bowring test as a determinative Estelle standard, we note in passing that this case satisfies all three prongs. First, Norris asserts the record does not show that Lay suffers from a "serious disease." This claim is directly contradicted by the state's psychiatrists and psychologists, who repeatedly diagnosed Lay as suffering from serious mental health problems in dire need of proper treatment. Moreover, the magistrate and the district court found Lay might pose a danger to himself if his suicidal tendencies are reawakened, and his record indicates he could pose a danger to children if he does not receive treatment.
 
 
 35
 Second, Norris argues there is no evidence that Lay's mental health problems may be substantially alleviated with treatment. He declares Lay "has only borderline intelligence" and therefore may not be amenable to treatment. This assertion is utterly absurd, given that the state's psychiatrists and psychologists who examined Lay, and who obviously believed his problems could be alleviated with therapy, were fully aware of his mental capabilities when they urged his transfer to DCI. Furthermore, Lay has sought treatment from his first day of incarceration.
 
 
 36
 Third, Norris asserts there is no potential harm to Lay if his mental health treatment is delayed or denied. He points out that Lay has not attempted suicide, nor made any detailed plans to that end. Norris claims Lay's assaultive behavior has been directed solely at his own children. The state's own psychologist, Liz Donald, however, reported that Lay has admitted assaulting infants other than his own, and would probably make more admissions "[i]f he were in treatment...." Dr. Donald also found Lay not to be suicidal, but noted he had considered it in the past and the status of his mental health would deteriorate without proper treatment.
 
 
 37
 Norris argues that the "real" issue in this case is the adequacy of the treatment Lay has received, and that federal courts should defer to the medical judgments of prison officials. But Norris overlooks the fact that the magistrate and district court relied on the state's own psychiatrists and psychologists in ordering that Lay begin receiving some type of mental health treatment. The record shows all of the state's examiners have recommended that Lay be transferred to DCI to begin treatment as soon as possible. Contrary to Norris' assertions, either under the general standard of Estelle or the three-factor test formulated in Bowring, the record fully supports the findings of the magistrate and the district court that the State of Tennessee has been deliberately indifferent to Lay's needs for mental health treatment.
 
 III.
 
 38
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 *
 Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation
 
 
 [1]
 Lay's second wife has now divorced him, and he has lost all parental rights to his children