NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3134
_____

BIENVENIDO RODRIGUEZ, JR.,
                              Appellant

v.

*SECRETARY PENNSYLVANIA DEPARTMENT OF
CORRECTIONS; PAUL K. SMEAL, S.C.I. Smithfield
Superintendent; RONALD A. LONG, Medical Director;
ROB PRICE, Medical Administrator;
GEORGE WEAVER, Medical Health Care Administrator;
ALAN B. FOGEL, Director of Bureau Health Care Prison Services;
P.A. DAWN MILLS;
P.A. RAY MCMULLEN;
R.N. GERALD HARTMAN;
D.C.S. VICTORIA L. KORMANIC;
F.D. JAMES A. ECKARD;
C.S.G.A. CINDY WATSON;
P.A. TYSON DERRICK GILLMAN;
N.P. JOSH MAHUTE

*(Pursuant to Rule 43(c), Fed. R. App. P.)
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 08-00765)
District Judge:  Honorable Edwin M. Kosik
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
On July 19, 2011

Before: RENDELL, CHAGARES and ALDISERT, <u>Circuit</u> <u>Judges</u>

(Opinion filed: August 12, 2011 )

_____

OPINION
_____

PER CURIAM

Bienvenido Rodriguez, Jr. has appealed pro se from the District Court's order that granted defendants' motions to dismiss. For the reasons that follow, we will affirm the District Court's judgment.

I.    <u>Background</u>

In December 2007, Rodriguez, a prisoner at State Correctional Institution ("SCI") Smithfield who was confined in the Restricted Housing Unit ("RHU"), complained of hernia pains. Physician Assistant Mills examined Rodriguez, acknowledged the hernia and prescribed Motrin and an abdominal binder to keep the hernia in place, as it was protruding. Although he did not personally examine Rodriguez at that time, Dr. Long countermanded Mills' prescription, concluding that Motrin would be detrimental to Rodriguez's chronic liver condition and indicating that use of an abdominal binder was not allowed in the RHU.

Rodriguez then requested a sick call follow-up. Physician Assistant McMullen examined him and explained to Rodriguez why he was not given Motrin or other

medications to alleviate his hernia pain. Rodriguez then requested from the Medical Contract Vendor, Rob Price, emergency medical attention to treat the hernia and have it surgically removed; Rodriguez stated that he was in pain and could not sleep at night. When Price did not respond, Rodriguez completed a request slip seeking emergency medical attention from Medical Health Care Administrator Weaver. Hartman responded, stating that surgery would not be performed because the hernia was easily reducible and advising Rodriguez to have his hernia monitored through sick calls.

On January 10, 2008, Rodriguez filed a grievance, alleging deliberate indifference for failing to respond to his serious medical needs. Kormanic responded to his grievance, stating that it had no merit because Dr. Long's review of the medical record indicated that surgical repair was unnecessary, that Rodriguez could not have Motrin due to his liver condition, which was documented on January 5, 2008, and that an abdominal binder was unwarranted because Rodriguez's activity in the RHU was limited. Rodriguez appealed. Superintendent Smeal responded that the appeal was meritless, relying on Dr. Long's assessment of Rodriguez's condition.[1] Rodriguez appealed, seeking final review of his grievance; on April 1, 2008, Chief Grievance Officer Watson informed him that his final appeal had been denied.

In June 2009, Rodriguez experienced severe pain; he was unable to eat, walk, or

---

[1] Rodriguez alleged that Eckard responded to his appeal. The record shows that Eckard was carbon copied on the letter regarding the appeal denial and that he initialed the original denial of the grievance.

fully straighten his back. Physician Assistant Gillman examined Rodriguez and determined that he had an incarcerated hernia; he said that he would discuss Rodriguez's condition with Dr. Long. Rodriguez requested an abdominal binder, but Gillman explained that Rodriguez could not have an abdominal binder in the RHU. Nurse Practitioner Mahute examined Rodriguez on June 21, 2009; he thought that Rodriguez had a cyst and said that he would discuss Rodriguez's condition with Dr. Long. On June 22, 2009, Rodriguez experienced severe pain and was taken to the medical department, where Dr. Long examined him and diagnosed an incarcerated strangulated umbilical hernia. Rodriguez was transported to J.C. Blair Memorial Hospital, where an MRI revealed multiple hernias. After surgery was performed, Rodriguez was returned to SCI Smithfield on June 23, 2009.[2] Rodriguez returned to the RHU on June 26, 2009, and he began to bleed from his surgical incision the next day. Rodriguez requested an abdominal binder; after Mahute examined him, Rodriguez was issued an abdominal binder "with no problem."

Rodriguez filed a civil rights action, asserting an Eighth Amendment violation against twelve defendants based on the denial of medical care;[3] he stated that "[a]ll [of] this could [have] been avoided if [he] was issued with an [abdominal binder] in the first

---

[2] Rodriguez states that a surgeon at J.C. Blair Memorial Hospital informed him that surgery was necessary because his hernia(s) caused a life-threatening situation.

[3] Rodriguez's original complaint named fourteen defendants. By order entered October 9, 2009, the District Court terminated defendants Jeffrey A. Beard and Alan B. Fogel because they were not named in the amended complaint.

place to support [his hernia] or if Dr. Long . . . proceeded with tests . . . to verify the seriousness of [his] condition or sen[t] [him] to a specialist." Defendants filed motions to dismiss for failure to state a claim, which were granted. Rodriguez timely appealed.

II.     Jurisdiction and Standard of Review

We have jurisdiction under 28 U.S.C. § 1291, and our review of an order granting a motion to dismiss is plenary. Phillips v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008). We will "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Id. at 233 (citation omitted). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

III.    Discussion

For the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate that the defendants were deliberately indifferent to his medical needs and that those needs were serious. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." Natale v. Camden County Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). We have found deliberate indifference when a prison official knows of a prisoner's need

6

for medical treatment but intentionally refuses to provide it, delays necessary medical treatment for a non-medical reason, or prevents a prisoner from receiving needed medical treatment. Rouse, 182 F.3d at 197.

Mere medical malpractice does not constitute deliberate indifference. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976); Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004). Considerable latitude is given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . (which) remains a question of sound professional judgment." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)). Unless there is a reason to believe (or actual knowledge) that prison medical personnel are mistreating or failing to treat the prisoner, a non-medical prison official generally "will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." Spruill, 372 F.3d at 236.

### A. Non-Medical Defendants

The District Court properly dismissed Rodriguez's claims against the non-medical defendants for failure to state a claim. Kormanic, Eckard, Smeal, and Watson were non-medical officials involved in the grievance process. Hartman, though a Registered Nurse, did not treat Rodriguez; Rodriguez describes Hartman's role as administrative. Although these defendants were aware of Rodriguez's hernia and his complaints, their decisions and responses were based on prison records of his medical treatment. Rodriguez has

7

asserted no reason these defendants would have known (or had reason to believe) that medical staff had mistreated or failed to treat Rodriguez.  See Spruill, 372 F.3d at 236.

Rodriguez alleged that Weaver and Price were indifferent to his medical needs for failing to respond to his request for emergency medical care.  Weaver and Price were medical administrators, rather than physicians who provided medical care to Rodriguez; they cannot "be considered deliberately indifferently simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by [prison medical staff]."[4]  See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

B.    Medical Defendants

The District Court properly dismissed Rodriguez's claims against the medical defendants (Long, Mills, McMullen, Gillman, and Mahute), because his complaint does not plead factual content that would support a reasonable inference that these defendants had the requisite mental state.  See Rouse, 182 F.3d at 197 (to meet the "deliberate indifference" standard, plaintiff must show conduct akin to recklessness or conscious disregard of a serious risk).  Rodriguez claimed that the medical defendants knew of and disregarded his medical needs.  In support, he asserted that these defendants failed to provide him an abdominal binder or Motrin to treat his condition, and that they also failed to conduct tests or send him to a specialist.

---

[4] The District Court dismissed the claims against these defendants for lack of personal involvement as well.  Because we affirm on the basis discussed above, we need not address the question whether there was personal involvement.

8

Rodriguez's complaint and accompanying exhibits, however, do not contain sufficient facts to support his claim. The exhibits indicate that Mills, McMullen, Gillman, and Mahute examined Rodriguez and concluded that neither Motrin nor an abdominal binder would be provided based on review of Rodriguez's medical record, RHU policy, and discussions with Long. Rodriguez's medical condition was monitored. After Long diagnosed an incarcerated strangulated umbilical hernia, Rodriguez was transferred to J.C. Blair Memorial Hospital for tests, which confirmed that diagnosis, and surgery was performed. Medical staff at the prison provided Rodriguez an abdominal binder when there were problems with the surgical incision after he returned to the RHU.

We agree with the District Court that Rodriguez's allegations do not raise an inference that any of the medical defendants acted with deliberate indifference. To the contrary, his factual assertions indicate that the medical defendants provided Rodriguez with regular examinations, culminating with surgical treatment of his condition. Although Rodriguez may not have received treatment as quickly as he would have liked, or in the manner he would have preferred, he has alleged nothing suggesting that any delay in treatment was the result of deliberate indifference to his serious medical needs. Having construed Rodriguez's pro se complaint liberally, we conclude that none of his allegations "'raise a right to relief above the speculative level.'" Phillips, 515 F.3d at 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 555).

Accordingly, we will affirm the judgment.

9