ALD-28                                                    NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3243
_____

MICHAEL EDWARD SHARPE,
                    Appellant
v.

EDIBERTO MEDINA;
DIANE HESS, R.N.;
MARYLIN ANGUD, M.L.P.;
PAUL SCHULTZ, Warden

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 10-04276)
District Judge:  Honorable Noel L. Hillman

_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
October 27, 2011
Before:  SLOVITER, FISHER and WEIS, Circuit Judges
Opinion filed: November 10, 2011
_____

OPINION
_____

PER CURIAM.

       Michael Edward Sharpe, a prisoner at the Federal Correctional Institution ("FCI")

Fairton, appeals pro se from the District Court's order granting Defendants' motion for

summary judgment. For the reasons that follow, we will affirm the District Court's judgment.

I.    Background

The record reflects that on May 15, 2009, Sharpe complained of severe chest pains. An electrocardiogram ("EKG") was performed, which revealed abnormal results. Sharpe was then transported to South Jersey Regional Medical Center, where Dr. Baptist, a cardiologist, diagnosed Sharpe with atypical chest pain. Dr. Baptist prescribed Sharpe Metoprolol, a beta-blocker, to treat Sharpe's high blood pressure and chest pain, and Sharpe was discharged the same day. Marilyn Angud, a Mid-Level Practitioner at FCI Fairton, performed a post-consultation examination, and ordered Sharpe's Metoprolol prescription.

On June 3, 2009, Sharpe again complained of severe chest pains. Dr. Morales examined Sharpe in the afternoon; an EKG was performed, which indicated the same abnormalities that Sharpe experienced in his May 2009 EKG. Sharpe informed Dr. Morales that he had not been taking Metoprolol. Dr. Morales renewed Sharpe's Metoprolol prescription and prescribed additional medications.[1]

In August 2010, Sharpe filed a Bivens[2] action against Ediberto Medina, Health Services Administrator, Clinical Nurse Diane Hess, Angud, and former Warden Schultz,

_____

[1] Sharpe's medical records show that Sharpe continues to experience chest pains. The severity of his condition has not increased.

[2] Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971).

2

alleging deliberate indifference to his serious medical needs. In his complaint, Sharpe asserted that he had suffered from severe chest pains during the early morning of June 3, 2009, but did not receive medical attention until the afternoon due to the actions of Hess and Medina, and the policy implemented by Schultz. Sharpe alleged that a prison officer was unable to reach the health services staff on June 3, 2009, until approximately 6:00 am, when Hess informed the officer to send Sharpe to the health services unit. When Sharpe arrived at the health services unit, however, Hess informed him that she could not examine him until she completed the medication line.[3] At approximately 7:00 am, Ediberto Medina, Health Services Administrator, arrived at the health services unit. Sharpe claimed that Medina stated that he had received a call about Sharpe informing him that Sharpe was simply looking for attention. Soon after Medina arrived, FCI Fairton was placed on institutional lockdown. Sharpe had yet to receive medical attention, but Medina ordered Sharpe to return to his cell.[4] Thus, Sharpe claimed that Medina and Hess refused to treat his severe medical condition, and Schultz created a policy that caused him to suffer through the night due to the unavailability of medical assistance. Sharpe additionally alleged that he did not take his Metoprolol because Angud failed to order his medication and never advised him that a medication had been prescribed.

---

[3] While Sharpe was waiting for medical assistance, he stated that another inmate that was complaining of chest pains was treated.

[4] Sharpe was not examined by Dr. Morales until after lockdown was completed.

3

Defendants filed a motion for summary judgment. Defendants' motion included declarations from Angud and Dr. Morales, Sharpe's medical records, and FCI Fairton's emergency medical procedures for morning watch. Sharpe filed a response opposing defendants' motion, which raised an additional claim, that Schultz was deliberately indifferent to the serious medical needs of inmates because the panic buttons at FCI Fairton do not work. Sharpe did not request discovery, and the only additional evidence he presented was identical declarations from four inmates stating that FCI Fairton does not have a working emergency panic button for inmates in their cells and that they have seen inmates suffer through the night and/or die because there was not any medical staff available at night. Defendants opposed Sharpe's new claim, arguing that he failed to exhaust his administrative remedies for that claim. Sharpe then filed a motion for a temporary stay to allow him to exhaust his administrative remedies. The District Court granted defendants' motion for summary judgment, dismissed Sharpe's additional claim, and denied Sharpe's motion for a temporary stay. Sharpe timely appealed.

II.    Jurisdiction and Standard of Review

We have jurisdiction pursuant to 28 U.S.C. § 1291. "We review district court decisions regarding both summary judgment and dismissal for failure to state a claim under the same de novo standard of review." Barefoot Architect, Inc. v. Bunge, 632 F.3d 822, 826 (3d Cir. 2011). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (internal quotations

4

omitted). Summary judgment is granted when viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a); Beers-Capitol v. Whetzel, 256 F.3d 120, 130 n.6 (3d Cir. 2001).

III.    Discussion

A.    Dismissed Claim

Sharpe conceded that he had yet to exhaust his administrative remedies for his claim that Schultz was deliberately indifferent to his serious medical needs by failing to insure that FCI Fairton had working emergency panic buttons for inmates. Therefore, he requested that the District Court grant him a temporary stay to allow him to exhaust his administrative remedies. The Prisoner Litigation Reform Act prohibits a prisoner from bringing a civil rights suit "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Thus, the exhaustion of all available administrative remedies is a precondition to filing suit. See Ahmed v. Dragovich, 297 F.3d 201, 209 & n.9 (3d Cir. 2002). The failure to exhaust "requir[es] an outright dismissal of such [claims] rather than issuing continuances so that exhaustion may occur." Johnson v. Jones, 340 F.3d 624, 628 (8th Cir. 2003) (collecting cases and holding that a complaint must be dismissed if exhaustion was not completed at time of filing). Because Sharpe failed to exhaust his claim regarding emergency panic buttons prior to filing his Bivens action, the District Court properly dismissed the claim and properly denied his motion for a temporary stay.

5

B.      Summary Judgment

For the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate that the defendants were deliberately indifferent to his medical needs and that those needs were serious. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). Mere medical malpractice does not constitute deliberate indifference. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976); Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004). Considerable latitude is given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . (which) remains a question of sound professional judgment." Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)). Nevertheless, we have found deliberate indifference when a prison official knows of a prisoner's need for medical treatment but intentionally refuses to provide it, delays necessary medical treatment for a non-medical reason, or prevents a prisoner from receiving needed medical treatment. Rouse, 182 F.3d at 197.

An Eighth Amendment claim implicating supervisors for their deficient policies

6

adds another level to the analysis. Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001). To prove that a supervisory policy was so deficient to constitute deliberate indifference, a plaintiff must show that: "(1) the existing policy . . . created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy." Id. at 134. We have stated that supervisor liability is established where a plaintiff shows that "the supervisory official failed to respond appropriately in the face of an awareness of a pattern of such injuries." Id. (citation omitted).

Sharpe claims that Angud was deliberately indifferent to his serious medical needs because she allegedly failed to order his Metoprolol prescription and allegedly never advised him that he was prescribed Metoprolol for his atypical chest pain. The record shows that Angud did place an order for Sharpe's Metoprolol. Whether Angud informed Sharpe that he was prescribed Metoprolol, however, is in dispute. Nevertheless, even if Angud failed to inform Sharpe that he was prescribed Metoprolol, this merely demonstrates that Angud was negligent. Sharpe has not presented any facts that suggest that Angud intentionally refused to provide Sharpe or intentionally prevented Sharpe from receiving his prescription. Accordingly, the District Court properly granted summary judgment in favor of Angud.

Sharpe asserts that Hess and Medina were deliberately indifferent to his medical needs because they refused to provide medical treatment when he was suffering from

7

severe chest pains. These conclusory allegations, without more, are not sufficient to defeat a motion for summary judgment. To avoid summary judgment, the nonmoving party must produce evidence "such that a reasonable jury could return a verdict for [him]." Zilich v. Lucht, 981 F.2d 694, 696 (3d Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). This required Sharpe to go beyond the pleadings and point to evidence in the record that supported each essential element of his case. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). It appears that Sharpe clearly suffered from chest pains the morning of June 3, 2009, and believes that Hess and Medina prevented him from being treated in a timely manner. However, Sharpe failed to point to evidence that Hess and Medina's determination that his need for medical care was not urgent established deliberate indifference to his medical needs.[5] Accordingly, the District Court properly granted summary judgment in favor of Medina and Hess.

Sharpe asserts that Schultz was deliberately indifferent to his serious medical needs because FCI Fairton's policy of having no medical staff at FCI Fairton between the hours of 12:00 am and 6:00 am caused him to suffer from chest pains the morning of June 3, 2009. Sharpe alleges that there has been a pattern of prisoners suffering, including deaths of inmates, during the morning watch shift due to FCI's policy. He supports this claim with the identical affidavits of four inmates stating that they have seen

---

[5] To the extent that Sharpe argues that the District Court granted summary judgment prematurely because Sharpe wished to conduct discovery, this argument fails. Sharpe did not demonstrate and the docket does not indicate that Sharpe filed any requests for discovery.

8

inmates suffer through the night and/or die because there was not any medical staff at FCI Fairview available at night.

The record indicates that there is not medical staff present at FCI Fairview between 12:00 am and 6:00 am. However, FCI Fairton has established emergency care procedures for handling situations requiring urgent medical attention during these hours. These procedures indicate that medical staff is available, on-call, for situations requiring urgent medical attention.[6] Although Sharpe provides affidavits from four inmates witnessing inmates suffer, Sharpe does not point to evidence that establishes that Schultz was aware of a pattern of inmate suffering or deaths as a result of FCI Fairview's staffing policy during morning watch. Thus, Sharpe has not demonstrated that "a reasonable jury could return a verdict for [him]." See Zilich, 981 F.2d at 696. Accordingly, the District Court properly granted summary judgment in favor of Schultz.

For the foregoing reasons, we will affirm the District Court's judgment. We also deny Sharpe's motion for appointment of counsel. See Tabron v. Grace, 6 F.3d 147, 155 (3d Cir. 1993).

---

[6] Additionally, for life threatening emergencies, Emergency Medical Systems will be contacted, as well as on-call medical staff.