**Suzanne M. FRAHM, Plaintiff,**

v.

**James STARKS, Defendant.**

**No. 92–CV–73858.**

United States District Court, E.D. Michigan, S.D.

Dec. 21, 1992.

Aff. at 1; Transcript of Dec. 4 Hearing.

Michael L. Donaldson, Livonia, MI, for plaintiff.

Eric D. Smith, Cummings, McClorey, Davis & Acho, P.C., Livonia, MI, for defendant.

## MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

This matter is before the Court on defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56. Plaintiff has filed a response to defendant's motion to which defendant has replied.[1] For the reasons that follow, defendant's motion is GRANTED.

### I. BACKGROUND

On February 20, 1990, plaintiff, a self-described chronic asthmatic, went to Valerie Latzman's home at 33444 Morris Street, Wayne, Michigan, complaining of difficulty breathing. She maintains that following her arrival, two calls were made to 911 requesting emergency assistance. After placing the second call, plaintiff claims to have panicked and decided to drive herself to the hospital.

Meanwhile, defendant, a police officer for the City of Wayne, had been dispatched to the Morris Street address on the report of a drug overdose.[2] While enroute to the scene, he was advised that the subject who had purportedly taken the overdose had left the location in a brown Chevette. Upon arriving at Morris Street, he observed the above-mentioned vehicle stopped at a red light. When it began to drive away, he activated his overhead emergency lights to signal the driver to stop. Rather than heeding way, the vehicle continued on, making several erratic lane changes, and travelling well below the posted speed limit. Eventually, the vehicle stopped, and defendant was able to identify plaintiff as the operator.[3]

Plaintiff claims that once stopped, she informed defendant that she was in respiratory distress, needed medical attention, and was attempting to drive to the hospital.[4]

---

1. It is hereby ORDERED that this matter will be determined without oral hearings. E.D.Mich. LR 7.1(e)(2).

2. According to a police report authored by defendant, the Wayne Police Department had been contacted by "Witness PRESSON," apparently Ms. Latzman's mother, who claimed that plaintiff had arrived at the Latzman home under the influence of drugs. The report further indicates that while at the home, "Witness PRESSON" observed plaintiff consume 6 to 8 pills of unidentified type.

3. Plaintiff does not challenge the propriety of defendant's traffic stop, nor does she dispute that, following the stop, probable cause existed to arrest her. Indeed, as a result of her actions, plaintiff was issued a citation for, among other things, operating a motor vehicle under the influence of drugs. On April 18, 1990, in Michigan's 29th District Court, she plead guilty to a lesser charge of careless driving.

4. This point is contested by defendant. In his report, he claims that he tried to convince plaintiff that she needed medical treatment, but that plaintiff refused stating that she was fine.

According to plaintiff, defendant nevertheless engaged her in a field sobriety test, which she ultimately failed.[5] Plaintiff maintains that at this point, she was arrested, handcuffed, and placed in the back seat of defendant's squad car. Shortly thereafter, under plaintiff's version of the facts, an EMS vehicle arrived at the scene. She claims that she pleaded with defendant to let her go with the EMS unit to the hospital, but that he refused, eventually waving it away.[6] It was not for another 20 to 25 minutes that defendant took plaintiff to a hospital emergency room.[7]

On July 7, 1992, plaintiff brought suit in this Court charging that defendant's actions violated the Eighth and Fourteenth Amendments. Specifically, plaintiff asserts that defendant's refusal to allow her to go with the EMS unit deprived her of substantive due process and constituted cruel and unusual punishment. Defendant has moved for summary judgment, arguing that the record will not support a finding that he was deliberately indifferent to plaintiff's medical needs, and, furthermore, that he is entitled to qualified immunity.

## STANDARD OF REVIEW

Defendant brings this motion pursuant to Fed.R.Civ.P. 56(c). Under this Rule, summary judgment is appropriate where there is no genuine issue of material fact which remains to be decided, and the moving party is entitled to judgment as a matter of law. A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). In applying this standard, the Court must view all materials offered in support of a motion for summary judgment, as well as all pleadings, depositions, answers to interrogatories, and admissions properly on file in the light most favorable to the nonmoving party. *Id.* at 247–48, 106 S.Ct. at 2509–10. Where the nonmoving party has failed, however, to present evidence on an essential element of their case, they have failed to meet their burden and all other factual disputes are irrelevant and thus summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## OPINION

■ As an initial matter, plaintiff, as a pretrial detainee,[8] did not enjoy the protections of the Eighth Amendment following her detention by defendant. *Barber v. City of Salem,* 953 F.2d 232, 235 (6th Cir. 1992). Her claim that defendant's actions constituted cruel and unusual punishment thus fails as a matter of law. However, the rights of detainees under the due process clause of the Fourteenth Amendment are analogous to the Eighth Amendment rights of prisoners.[9] *Roberts v. City of Troy,* 773 F.2d 720, 723 (6th Cir.1985). This Court must therefore consider whether defendant was deliberately indifferent to a serious medical need in refusing to allow

---

**5.** *See* footnote 4, *infra.*

**6.** Again, plaintiff's recitation off the facts does not square with defendant's. According to affidavits filed by defendant and Richard Berger, an EMS Technician who was at the scene, plaintiff refused to be examined or transported to a medical facility despite defendant's urging. Furthermore, both aver that at no time did defendant wave the EMS unit off the scene. Rather, they left when it became apparent that plaintiff was not in any immediate physical distress, and had declined any treatment.

**7.** Both parties agree that during this interim, defendant, with plaintiff in the back seat of the

squad car, remained on the scene until plaintiff's vehicle had been properly processed and towed away.

**8.** As the name implies, pretrial detainees are persons in custody who have been charged with a crime, but have not yet been tried on that charge. *See Bell v. Wolfish,* 441 U.S. 520, 523, 99 S.Ct. 1861, 1865, 60 L.Ed.2d 447 (1979).

**9.** This avoids the anomaly of extending greater constitutional protection to convicts than to those awaiting trial.

plaintiff to go with the EMS unit.[10] *See Danese v. Asman*, 875 F.2d 1239, 1243 (6th Cir.1989); *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir.1988) (citing *Anderson v. City of Atlanta*, 778 F.2d 678 (11th Cir.1985)).

In making this inquiry, courts have generally held that a defendant's negligence or mistake in either administering or assessing the need for medical care do not raise issues of constitutional import. *Estelle v. Gamble*, 429 U.S. 97, 105–06, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir.1988); *Monmouth County Correctional Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir.1987); *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir.1977). Rather, something akin to "knowledge of the need for medical care [coupled with the] ... intentional refusal to provide that care ..." is required. *Antaca v. Prison Health Serv.*, 769 F.2d 700, 704 (11th Cir. 1985) (citations omitted).[11]

Here, defendant has submitted two affidavits in support of his motion for summary judgment, one authored by defendant, and the other by Richard Berger, an EMS Technician. Both state that, in their respective judgments, plaintiff did not appear to be in any need of immediate medical treatment while in defendant's custody. *Affidavit of James Starks*, p. 2; *Affidavit of Richard Berger*, p. 2.[12] Plaintiff has not offered anything to suggest that she did indeed require immediate care and that defendant knew or was aware of that need.[13] Accordingly, she has failed to present evidence on an essential element of her case. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. Defendant's motion for summary judgment is GRANTED.

## CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is GRANTED.[14]

---

**10.** Although defendant challenges plaintiff's version of the facts, the evidence must be viewed in the light most favorable to the nonmoving party.

**11.** Some courts bifurcate their examination of "deliberate indifference" and "serious medical needs" into two distinct components when considering constitutional claims. That is, those courts will determine whether a defendant's actions in denying, delaying, or interfering with medical care were purposeful, and then, without an examination of defendant's state-of-mind, separately inquire into whether the plaintiff's medical needs were objectively serious. *See e.g. McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir.1992) (the court held that a medical need would be deemed "serious" if an injury existed "that a reasonable doctor or patient would find important and worthy of comment or treatment"). Courts utilizing this analysis might erroneously find a constitutional violation where medical treatment has been purposefully denied due merely to a negligent or mistaken assessment of a plaintiff's physical condition. Such a result is plainly at odds with the Supreme Court's ruling is *Estelle v. Gamble*, 429 U.S. 97, 105–06, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976)

("[I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.' Thus, a complaint that a [state actor] has been negligent in diagnosing or treating a medical condition does not state a valid ... claim ...").

**12.** Of course, Mr. Berger is trained to make this precise sort of evaluation, and, as an expert witness, would be permitted to offer an opinion on this matter. Even if he was mistaken, this would not rise to the level of a constitutional violation. *Estelle, supra.*

**13.** All that plaintiff's affidavit suggests is that she informed defendant of her desire for medical treatment, and that defendant ignored her request.

**14.** Defendant has requested an award of sanctions pursuant to Fed.R.Civ.P. 11. Inasmuch as the *McGuckin* decision, if followed by this Court, could be read to support plaintiff's claim, it cannot be said that plaintiff's complaint was without basis in law. Thus, defendant's request is DENIED.