**Brenda Lynne CARNELL, Plaintiff,**

v.

**Cheryl GRIMM, Chris Sueo Yamaguchi, Susan Dowsett, Jerry Yoshit Kujiuji, Officer R. Noguchi, Officer C. Yoshimura, Officer C. Collins, Officer P. Thornton, Officer C.K. Flynn, City and County of Honolulu, Officer Earl Penaroza, and John Does 1–10, Defendants.**

Civ. No. 93–00385DAE.

United States District Court,
D. Hawai'i.

Dec. 6, 1994.

Order Denying Reconsideration but
Ordering Entry of Separate Judgment
Dec. 27, 1994.

Jacob M. Merrill, Honolulu, HI, for plaintiff.

Duane W.H. Pang, and Ronald B. Mun, Corp. Counsel, City & County of Honolulu, Honolulu, HI, for defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

DAVID ALAN EZRA, District Judge.

The court heard defendants' motion on November 21, 1994. Duane W.H. Pang, Esq., appeared on behalf of defendants; Jacob M. Merrill, Esq., appeared on behalf of plaintiff. After reviewing the motion and the supporting and opposing memoranda, the court GRANTS in part and DENIES in part defendants' motion for summary judgment.

### BACKGROUND

On November 1, 1992, Brenda Carnell ("plaintiff") celebrated Halloween at Honolulu's Restaurant Row. According to plaintiff, she accepted a ride home from a man who raped her in his car in the vicinity of Restaurant Row. With plaintiff still in his car, the man then drove onto the Nimitz Highway, where he stopped at a stoplight. Plaintiff fled from the car, the man tried to prevent her escape, bystanders intervened, and Restaurant Row security called the police.

Responding to the call regarding the possible sexual assault at 4:30 a.m., Officer Cornelius K. Flynn ("Defendant Flynn") saw plaintiff running down the middle of the road. Plaintiff contends that she was in the road at times, but was running on the side of the road when Defendant Flynn arrived. According to Defendant Flynn, he approached plaintiff, asked if she needed help, and told her to get out of the road. After she continued running in the road, he stopped her and took her to the sidewalk.

Other officers joined Defendant Flynn, who asked plaintiff what had happened. She responded with shouts of profanity and attempted to elude the officers and run back out onto the roadway. According to the officers, she also struggled with them, threatened them, and made sudden moves towards them. The officers arrested plaintiff for disorderly conduct. Plaintiff contends that she told the officers she had been raped. The officers disagree.

Defendant Flynn called a female officer to speak with plaintiff, who responded to that officer with continued threats and profanity. The police took the plaintiff to Central Receiving at the Honolulu Police Station. There, plaintiff refused to identify herself and could not be identified until a fingerprint technician could be called in to match her fingerprints. Plaintiff alleges that officers assaulted her in the cellblock.

On May 11, 1993, plaintiff brought this action pursuant to 42 U.S.C. § 1983, alleging violations of her constitutional rights under the Fourth, Fifth, Eighth, Ninth and Fourteenth Amendments. Plaintiff named several officers of the Honolulu Police Department and the City and County of Honolulu ("CCH") as defendants. Defendants brought this motion for summary judgment on October 11, 1994. On November 7, 1994, plaintiff dismissed by stipulation all parties except Defendant Officers R. Noguchi and C.K. Flynn and defendant CCH.

## STANDARD OF REVIEW

### I. Summary Judgment

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party has the initial burden of "identifying for the court those portions of the materials on file in the case that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). In a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party. *State Farm Fire & Casualty Co. v. Martin,* 872 F.2d 319, 320 (9th Cir.1989).

Once the moving party has met its burden of demonstrating the absence of any genuine issue of material fact, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *T.W. Electrical,* 809 F.2d 626. The opposing party cannot stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv.,* 809 F.2d at 630; *Blue Ocean Preservation Soc. v. Watkins,* 754 F.Supp. 1450, 1455 (D.Haw.1991); Fed.R.Civ.P. 56(e). There is no genuine issue of fact if the opposing party fails to offer evidence sufficient to establish the existence of an element essential to that party's case. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552; *Blue Ocean Preservation Soc. v. Watkins,* 754 F.Supp. 1450 (D.Haw.1991). If the non-moving party fails to assert specific facts, beyond the mere allegations or denials in its response, summary judgment, if appropriate, shall be entered. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *T.W. Electric,* 809 F.2d 626; Fed.R.Civ.P. 56(e).

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory. *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 282 (9th Cir.1979).

### II. Qualified Immunity

Government officials who perform discretionary functions are protected from liability for civil damages when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In order for a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

Whether an official is protected by qualified immunity for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action. *Anderson v. Creighton,* 483 U.S. at 639, 107 S.Ct. at 3038. In *Creighton,* the Court held that despite an unlawful warrantless search, an officer could be entitled to qualified immunity if a reasonable officer could have believed that the search was lawful in light of the clearly established law and the information possessed by the searching officer. *Id.* Further, if a reasonable police officer would have believed that probable cause existed to arrest a defendant, the police officer is protected by qualified immunity. *Hunter v. Bryant,* 502 U.S. 224, 226–27, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991).

In summary, in order to determine whether a government official is entitled to qualified immunity in a section 1983 action, a court must (1) identify the right allegedly violated, (2) determine whether the right was clearly established, and (3) determine whether a reasonable official would have believed the official's conduct to be lawful. *Hamilton v. Endell,* 981 F.2d 1062, 1066 (9th Cir.1992) (citing *Romero v. Kitsap County,* 931 F.2d 624, 627 (9th Cir.1991)). In deciding whether the right was clearly established, the court

attributes to defendants' knowledge of constitutional developments at the time of the violations, including all available case law. *Federal Deposit Ins. Corp. v. Henderson,* 940 F.2d 465, 477 (9th Cir.1991).

Given these standards, unless a plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery. *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). Since qualified immunity provides "an immunity from suit rather than a mere defense to liability," courts should resolve immunity questions "at the earliest possible stage in the litigation." *Hunter v. Bryant,* 502 U.S. at 227, 112 S.Ct. at 536. Even if the plaintiff's complaint alleges a violation of clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts. *Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815. If discovery does reveal genuine issues of fact which prevent determination of qualified immunity at summary judgment, the case must proceed to trial. *Act Up!/Portland v. Bagley,* 988 F.2d 868, 873 (9th Cir.1993).

The threshold determination of whether the law governing the conduct at issue is clearly established is a question of law for the court. *Act Up!/Portland,* 988 F.2d at 873. Furthermore, the determination of whether the facts alleged could support a reasonable belief in the existence of probable cause is also a question of law determined by the court. *Id.* When a district court's determination of either of these issues results in the denial of a claim for qualified immunity, the denial is a final decision which is immediately appealable under 28 U.S.C. § 1291. *Mitchell,* 472 U.S. at 530, 105 S.Ct. at 2817–18 (where denial turns on issues of law, decision is immediately appealable). However-

er, when the district court's denial of a claim for qualified immunity centers on a finding that genuine issues of material fact exist precluding summary judgment, the denial is not immediately appealable. *Id.; see also Velasquez v. Senko,* 813 F.2d 1509, 1511 (9th Cir.1987); *Act Up!/Portland,* 988 F.2d at 873.

### DISCUSSION

I. Existence of a Policy, Practice or Custom of Constitutional Violation

■ In order to sustain this action against the CCH, plaintiff must connect this defendant to the acts of the individual officers.[1] Plaintiff must demonstrate that officials with authority for making policy "promulgated, adopted, or ratified" a "policy" or "custom" of constitutional violations. *Thompson v. City of Los Angeles,* 885 F.2d 1439, 1444 (9th Cir.1989). Plaintiff could also show that officials knowingly acquiesced in a "longstanding practice or custom." *Los Angeles Police Protective League v. Gates,* 907 F.2d 879 (9th Cir.1990). Finally, plaintiff could demonstrate that her constitutional injury was a direct result of inadequate training or supervision. *Tokuhama v. City and County of Honolulu,* 751 F.Supp. 1385 (D.Haw.1989) (citing *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).

■ Plaintiff has offered no evidence of a policy or custom allowing or encouraging the constitutional violations she alleges. Neither does she offer evidence of inadequate training or supervision. Plaintiff attaches no relevant evidence to her papers, and she cites to no relevant admissions by the defendants.[2] The court finds that plaintiff has failed in her burden to offer evidence on this issue for which she will bear the ultimate burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552 (defendant as moving party need not present evidence negating an issue where the nonmoving party bears the burden and fails to offer any evidence). Therefore,

---

1. The CCH is not entitled to qualified immunity. *See Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).

2. Plaintiff attaches as evidence Honolulu Police Department General Order No. 9203. *See* Order No. 9203, Attached as Exhibit G to Plaintiff's Opposition to Defendants' Motion for Summary

Judgment. Given the order's provision of procedures for the treatment of sex crime victims, it would presumably indicate, if anything, that the officers did *not follow* the procedure promulgated by the department if the plaintiff's factual allegations against the officers are correct.

the court GRANTS defendants' motion for summary judgment to Defendant CCH.

## II. Action Against Defendants Flynn and Noguchi in their Official Capacities

■ Plaintiff has sued Defendants Flynn and Noguchi in both their official and individual capacities.[3] A suit against a law enforcement official in his official capacity generally represents merely another way of pleading the action against the entity of which the official is an agent. Therefore, courts should treat such suits as suits against the governmental entity. *Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). Any claims against Flynn and Noguchi in their official capacities duplicate plaintiff's claims against the CCH and are dismissed. *See Zervas v. District of Columbia,* 817 F.Supp. 148, 151 (D.D.C.1993) (dismissing as duplicative claims against officials in their official capacity where municipality had been sued); *See also Ashe v. Corley,* 992 F.2d 540, 544 (5th Cir.1993) (treating and granting motion for summary judgment as a 12(b) motion to dismiss where motion merely challenged the pleadings). The court addresses below the question of whether Defendants Flynn and Noguchi are entitled to qualified immunity for actions taken in their individual capacities.

## III. Action Against Defendants Flynn and Noguchi in their Individual Capacities

### A. *Arrest for Disorderly Conduct*

#### 1. *Constitutional Violation*

■ Plaintiff contends that the defendants violated her rights by arresting her without probable cause. Under *Illinois v. Gates,* the court asks whether the "totality of the circumstances" within the officer's knowledge at the time of the arrest would lead a prudent person to believe that the plaintiff had committed a crime. *Illinois v. Gates,* 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983). Probable cause requires "a probability or substantial chance of criminal activity." *Id.* at 243 n. 13, 103 S.Ct. at 2335 n. 13. While the existence of probable cause is generally a question for the trier of fact, the Ninth Circuit has held that, in applying the qualified immunity standard, the determination of whether the facts alleged could support a reasonable belief in the existence of probable cause is a question of law determined by the court. *Act Up!/Portland v. Bagley,* 988 F.2d at 873. Therefore, on this motion for summary judgment, the court's treatment of the issue of probable cause is addressed in the context of qualified immunity below.

#### 2. *Qualified Immunity*

■ Plaintiff enjoys a clearly established right against arrest without probable cause. *See Floyd v. Laws,* 929 F.2d 1390, 1394 (9th Cir.1991) (right is clearly established). The defendants are therefore entitled to qualified immunity if they did not knowingly violate this clearly established right. *Anderson v. Creighton,* 483 U.S. at 639, 107 S.Ct. at 3038–39. The determination of probable cause "requires an inquiry as to the facts and circumstances within an officer's knowledge." *Act Up!/Portland v. Bagley,* 988 F.2d at 873. However, when the facts underlying this inquiry are in dispute, then it is for the jury to resolve the factual dispute in order to enable the district court to decide "whether those facts support an objective belief that probable cause ... existed:" *Id.*

---

3. The parties do not dispute that Defendants Flynn and Noguchi acted as police officers employed by the Honolulu Police Department when they committed the acts on which this action rests. They therefore acted "under color of law" for the purposes of section 1983. Section 1983 provides in relevant part:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. To sustain a claim under section 1983, plaintiff must show not only that the defendants acted under the color of law, but that defendants' actions violated a right secured by the Constitution of the United States. *See West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 2254–55, 101 L.Ed.2d 40 (1988).

The officers arrested plaintiff for the offense of disorderly conduct. Haw.Rev. Stat. § 711–1101.[4] The roadway where this incident occurred runs directly in front of the Federal Courthouse. It is one of Honolulu's busiest avenues, a conduit for large trucks at high speeds.

Defendant Flynn alleges that he saw plaintiff running in the middle of the highway. *See* Affidavit of Officer Flynn attached to Defendants' Motion for Summary Judgment, at ¶ 6 ("he also observed a number of vehicles having to slow down and avoid striking plaintiff.") Defendant Flynn declares that, after he took plaintiff off the road, "Plaintiff continued to move toward the roadway and refused to remain still" and that "he believed that Plaintiff wanted to enter the roadway again and continue to run." Affidavit of Officer Flynn, at ¶ 11. Plaintiff stated at her deposition that she was on the side of the roadway. *See* Deposition Testimony of Plaintiff, attached as Exhibit A to Defendants' Motion for Summary Judgment, at p. 20, lines 6–10.[5]

Defendant officers also allege that she attempted to kick Defendant Flynn and resisted their attempts to calm her. *See* Affidavit of Officer Noguchi, attached to Defendants' Motion for Summary Judgment, at ¶ 9; Affidavit of Officer Flynn, at ¶ 10. Plaintiff does not deny that she struggled with the officers or that she sought to elude them. *See* Deposition Testimony of Plaintiff, at p. 22, lines 11–13. Therefore, the undisputed facts show that plaintiff was on or near the side of the highway when Defendant Flynn arrived and, after being removed from the roadway, that she struggled with the officers and attempted to run towards the roadway again.

Plaintiff also did not deny that she swore at the officers. *See id.* at p. 22, lines 9–10. It is undisputed that she repeatedly screamed profanities at them. *See* Affidavit of Officer Noguchi, at paragraph 9 ("I observed Plaintiff shouting profanities directly into the face of Officer Flynn."); *see also* Affidavit of Officer Flynn, at paragraph 10. Plaintiff claims, and the officers do not deny, that she repeatedly told them to leave her alone. *See* Deposition Testimony of Plaintiff, at p. 21, lines 6–12. The plaintiff's abusive language gave the officers an indication of plaintiff's agitation and therefore her propensity to create further risk to the public. However, any words or actions directed at the officers alone could not have constituted disorderly conduct, because Hawaii does not consider police officers as members of the "public" protected by Haw.Rev.Stat. section 711–1101. *See State v. Jendrusch,* 58 Haw. 279, 282 n. 3, 567 P.2d 1242 (1977) (where abusive language was directed against a police officer, the proper charge, if any, would have been harassment, not disorderly conduct).

Taking the facts in the light most favorable to the plaintiff, it is clear to this court that her presence on the side of the roadway in an agitated state presented the officers with a dilemma: do nothing and risk harm to the plaintiff and to the public through an accident the plaintiff might cause, or, intervene and risk this lawsuit. The officers chose the latter option, and this court cannot hold that they acted unreasonably. Given plaintiff's agitation and her desire to run on at least the side of the roadway, one of Honolulu's busiest highways, a prudent person would believe

---

**4.** Haw.Rev.Stat. § 711–1101 states, in pertinent part:
Disorderly Conduct.
(1) a person commits the offense of disorderly conduct if, with intent to cause physical inconvenience or alarm by a member or members of the public, or recklessly creating a risk thereof, he:
(a) engages in fighting or threatening, or in violent or tumultuous behavior; or
(b) makes unreasonable noise; or
(c) makes an offensively coarse utterance, gesture, or display, or addresses abusive language to any person present, which is likely to provide a violent response; or

(d) creates a hazardous or physically offensive condition by any act which is not performed under any authorized license or permit[.]

**5.** The exchange regarding plaintiff's position on or near the roadway went as follows:

Q: Were you in the roadway?
A: At times, yes.
Q: Were you in the roadway when the officer first arrived?
A: I was near the sidewalk ... I guess my foot was on the roadway, yes.
Deposition of Plaintiff, at p. 20, lines 5–10.

that the plaintiff had committed and was about to commit again the offense of disorderly conduct, placing the plaintiff and the public who travel the road at risk. *Illinois v. Gates,* 462 U.S. at 230–31, 103 S.Ct. at 2328. A prudent person would assume by her actions that, if not intending to create a risk, she was at least reckless as to the risk to the public that her activity was creating, meeting the statutory definition of disorderly conduct. Haw.Rev.Stat. section 711–1101. The defendants therefore could have reasonably believed in "a probability or substantial chance of criminal activity," that activity being the unpredictable presence of the plaintiff in or near the Nimitz Highway. *Id.* at 243 n. 13, 103 S.Ct. at 2335 n. 13. The officers' conduct under the circumstances does not indicate a knowing violation of plaintiff's clearly established right.

■ Plaintiff argues that the officers should have made further inquiries before effecting their warrantless arrest. Plaintiff cites to *Merriam v. Walton,* 856 F.2d 1333, 1335 (9th Cir.1988), in which the Ninth Circuit held that an officer who knew facts negating the elements of a kidnapping lacked probable cause to arrest. In this case, information allegedly possessed by the police regarding the sexual assault would not have negated an element of the crime of disorderly conduct. Plaintiff argues further that, because of her emotional state at the time, § 704–400 would have excused her conduct as the product of "a mental disease, disorder, or defect excluding responsibility" that rendered her unable to "appreciate the wrongfulness of [her] conduct or to conform [her] conduct to the requirements of law."

Defendants correctly respond that any evidence of such a defect would only serve as a defense or mitigating circumstance at trial. The fact that plaintiff was suffering from an extreme physical and mental shock would serve as a mitigating factor in her defense, not as a reason for officers to ignore her dangerous activity. Police officers cannot be charged with trying a case in their minds in the field before taking an individual into custody. That officers not hesitate is especially important where the public, including plaintiff, is at imminent risk.

Because under the totality of the undisputed circumstances, a prudent person would have believed in the existence of probable cause, Defendants Noguchi and Flynn did not violate plaintiff's clearly established constitutional rights by arresting her without probable cause. Given plaintiff's agitated and unpredictable condition and her proximity to the Nimitz Highway, the police had no choice but to take plaintiff into custody for her own safety and the safety of the public. Their acts were objectively reasonable.[6] Defendants Flynn and Noguchi are therefore entitled as a matter of law to qualified immunity for the arrest. Accordingly, the court GRANTS summary judgment to Defendants Flynn and Noguchi on alleged violations arising out of the arrest.

## B. *Indifference to Medical Needs*

Plaintiff argues that the defendant officers knew she had been raped but failed to seek medical treatment. Plaintiff points to Honolulu Police Department General Order No. 9203, which provides a procedure for the treatment of rape victims. *See* Order No. 9203, Attached as Exhibit G to Plaintiff's Opposition to Defendants' Motion for Summary Judgment. If plaintiff's version of the facts is correct, the officers had information indicating that she may have been the victim of a rape and yet proceeded to take her to Central Receiving at the Honolulu Police Station, not to one of the medical centers listed in the Order.[7]

---

6. The qualified immunity standard seeks to avoid making police officers "always err on the side of caution" because they wish to avoid lawsuits based on their actions. *Davis v. Scherer,* 468 U.S. 183, 193–95, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984). Indeed, it protects "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant,* 502 U.S. at 229, 112 S.Ct. 534, 537 (1991) (quoting *Malley v.*

*Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)).

7. The officers' failure to follow police procedures would also sound in negligence, as stated in plaintiffs common law claims. Mere negligence is no longer actionable under 42 U.S.C. § 1983. *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

### 1. *Constitutional Violation*

 Police officers have a constitutional duty not to remain deliberately indifferent to the need for medical treatment of an individual in their custody. *See Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir.1986); *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir.1989) (per curiam). While claims of pretrial detainees "arise under the due process clause, the eighth amendment guarantees provide a minimum standard of care for determining [a prisoner's] rights as a pretrial detainee, including [the prisoner's] right to medical care." *Jones*, 781 F.2d at 771; *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, n. 16, 60 L.Ed.2d 447 (1979) (due process applies to pretrial detainees). In order for an inmate to prevail on an Eighth Amendment claim of medical mistreatment, the inmate must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). Medical needs include the need for psychological treatment. *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir.1982); *Cabrales v. County of Los Angeles*, 864 F.2d 1454, 1461 (9th Cir. 1988), *vacated*, 490 U.S. 1087, 109 S.Ct. 2425, 104 L.Ed.2d 982, *reinstated*, 886 F.2d 235 (9th Cir.1989), *cert. denied*, 494 U.S. 1091, 110 S.Ct. 1838, 108 L.Ed.2d 966 (1990).

 Before determining deliberate indifference, courts must first focus on the seriousness of the detainee's medical need and the nature of the defendant's response to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1992). "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992). A "serious" medical need exists if the failure to treat the need could result in further significant injury or "unnecessary and wanton infliction of pain." [8]

*Id.* (quoting *Estelle v. Gamble*, 429 U.S. at 104, 97 S.Ct. at 291).

Victims of rape experience immediate and serious physical and psychological trauma. They require immediate treatment; failure to seek such treatment may subject them to further psychological injury and unnecessary pain. Whether the seriousness of the need was evident to the defendant officers presents a question of fact. However, the court believes that if the officers had information that would lead a reasonable person to believe the plaintiff had just been raped, they would have been confronted with a situation of serious medical need.

Assuming that they had this information, the response of Defendant Flynn was to take the plaintiff to Central Receiving and leave her there. Plaintiff does not dispute, however, that defendant Noguchi proceeded not to Central Receiving with Flynn but to Restaurant Row to conduct further investigation after plaintiff was taken away. *See* Affidavit of Officer Noguchi, at paragraphs 15, 16. Noguchi states that he "obtain[ed] some information," and returned to Central Receiving to interview the plaintiff. *Id.* According to Noguchi, plaintiff responded with shouts of profanities. *Id.* Noguchi states that, at that time, because plaintiff had refused to cooperate and he was unsure of what had happened to her, no investigation could be conducted. *Id.* So, Noguchi apparently left the plaintiff in detention in the cellblock, and this served as his response to plaintiff's apparent medical need.

 Once the serious need and the defendants' response to that need have been established, the court can turn to a determination of deliberate indifference. *McGuckin v. Smith*, 974 F.2d at 1060. Deliberate indifference may be manifested in two ways: either when officials deny, delay, or intentionally interfere with medical treatment, or by the way in which physicians provide medical care. *Id.* A police officer deprives a person of her opportunity to voluntarily seek treatment by taking her into custody. Once he has that person in custody, a police officer

---

**8.** Serious needs include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of treatment." *Id.*

**756**

must respond to a serious medical need by seeking appropriate treatment. If a police officer takes a person with a known heart condition into custody and then fails to seek treatment at the onset of a heart attack, the police officer shows deliberate indifference by "purposefully ignor[ing] or fail[ing] to respond to a prisoner's pain or possible medical need." *Id.* Similarly, an officer who has reason to believe someone has been raped and then fails to seek medical and psychological treatment after taking her into custody manifests deliberate indifference to a serious medical need.

■ While a finding that neglect of a condition was an isolated occurrence or an isolated exception to the overall treatment of the prisoner mitigates against a finding of deliberate indifference, a single egregious failure to treat a prisoner "strongly suggests that the defendant's actions were motivated by 'deliberate indifference.' " *Id.* (comparing *Wood v. Housewright,* 900 F.2d 1332, 1334 (9th Cir.1990), and *Toussaint v. McCarthy,* 801 F.2d 1080, 1111 (9th Cir.1986), with *Ortiz,* 884 F.2d at 1313–14, and *Hunt v. Dental Dept.,* 865 F.2d 198, 201 (9th Cir.1989). "[N]either a finding that a defendant's actions are egregious or that they resulted in significant injury to a prisoner is required in order to establish a violation of the prisoner's federal constitutional rights and create a cause of action under section 1983." *Id.* However, if an officer is merely negligent or mistaken in his assessment of a plaintiff's condition, he should not be found to be deliberately indifferent.[9] *See Estelle v. Gamble,*

429 U.S. at 105–06, 97 S.Ct. at 291–92. The *McGuckin* court summarized the test as follows:

> In sum, the more serious the medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those needs, the more likely it is that a plaintiff has established "deliberate indifference" on the part of the defendant.

*McGuckin v. Smith,* 974 F.2d at 1061.[10]

■ If a woman has been raped, her physical and psychological injuries may not obviously manifest themselves to police officers in the field. The court is mindful that it should not attempt to substitute its judgment for that of the officers. However, where, as here, officers are responding to a call regarding a sexual assault and, taking the facts as plaintiff states them, they arrest a person who tells them she has just been raped, they could be found to have deliberately ignored the need in not taking that victim to seek medical care. The court is unwilling to intone the old cliche by requiring "signs of a struggle" in order to compel a finding of medical necessity; many unseen injuries resulting from rape can rival more visually obvious traumas in their severity and the resulting need for immediate care. When an officer ignores significant information that the person he has just arrested has been raped and does not seek treatment for that person in his custody, that officer deliberately ignores a serious medical need. This is particularly true where the possibility of the rape victims' having acquired a sexually

9. In *Frahm v. Starks,* 809 F.Supp. 26, 29 n. 11 (E.D.Mich.1992), a district court criticized the Ninth Circuit's *McGuckin* test for deliberate indifference. The district court voiced a concern that bifurcating "deliberate indifference" and "serious medical needs" into two analytical components could result in a finding of deliberate indifference where the official was merely negligent or mistaken. *Id.* While the court does not agree that *McGuckin* allows such results, it agrees that mere negligence cannot qualify as "deliberate indifference" under *Estelle v. Gamble.* In *Frahm,* the district court granted summary judgment against a plaintiff who complained that a police officer had not allowed her immediately to accompany Emergency Medical Technicians. The court found that the plaintiff had failed to offer any evidence that she was in fact suffering from an asthma attack. *Id.*

10. The Supreme Court has very recently clarified the standard by equating it with criminal recklessness and holding that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm [to inmate health or safety] exists, and he must also draw the inference." *Farmer v. Brennan,* — U.S. —, —, 114 S.Ct. 1970, 1978, 128 L.Ed.2d 811 (1994). This holding does not guide this court's inquiry into an incident that occurred in 1992. In addition, at present, the court cannot yet make the subjective determination that the officers drew the inference of serious need and disregarded it as an issue of fact exists as to the knowledge they possessed at the time.

transmitted disease looms as a serious medical and psychological risk—a risk of which reasonable police officers should be aware of.

The parties dispute whether plaintiff informed Defendants Flynn and Noguchi that she had been raped.[11] This factual dispute precludes summary judgment on the issue of a constitutional violation. Assuming the facts as plaintiff states them, defendants Flynn and Noguchi would have violated plaintiff's due process rights by demonstrating deliberate indifference to plaintiff's need in failing to take plaintiff to receive medical care.

### 2. Qualified Immunity

The constitutional duty of public officials not to remain deliberately indifferent to serious medical needs, including psychological needs, of those in their custody is clearly established.[12] *See Jones,* 781 F.2d at 771 (applying Eighth Amendment standard to protect pretrial detainees' due process rights); *Estelle v. Gamble,* 429 U.S. at 106, 97 S.Ct. at 292 (stating Eighth Amendment standard); *Hoptowit,* 682 F.2d at 1253 (requirement of adequate medical care applies to psychological services); *Cabrales v. County of Los Angeles,* 864 F.2d at 1461 (same). While the court can find no case in this circuit applying the standard to an arrested rape victim, the basic "contours" of the due process right of individuals in custody are sufficiently established that "a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. at 640, 107 S.Ct. at 3039.

Incorporating the above discussion concerning the alleged due process violation, the court finds that the same issue of fact, whether the plaintiff informed the defendant officers that she had been raped, prevents

the court from finding whether defendants Flynn and Noguchi violated plaintiff's clearly established right.

In determining qualified immunity, the court must also address whether a reasonable officer could have believed his actions to be lawful. *Malley v. Briggs,* 475 U.S. at 341, 106 S.Ct. at 1096 (qualified immunity protects all but the plainly incompetent or those who knowingly violate the law). Defendants bear the burden of proving that their conduct was reasonable. *Hamilton v. Endell,* 981 F.2d at 1066. If plaintiff did inform Defendants Flynn and Noguchi that she had been raped, the court could not find as a matter of law that Flynn was reasonable in proceeding to take plaintiff to Central Receiving for booking and detention or that Noguchi was reasonable in allowing her to be taken to Central Receiving and then leaving her there after interviewing her later.

Because an issue of fact exists as to whether plaintiff told the officers she had been raped, the court cannot determine qualified immunity and therefore DENIES defendants' motion for summary judgment on the liability of Defendants Flynn and Noguchi in their individual capacities for violation of plaintiff's due process rights under the Fourteenth Amendment.

### C. Physical Abuse During Detention

Because the plaintiff offers absolutely no evidence that she suffered any physical abuse during her detention and no evidence involving Defendants Flynn and Noguchi in any abuse, the court grants defendants motion for summary judgment on all claims arising out of physical abuse to plaintiff during her detention.

---

**11.** It is undisputed that the plaintiff told the police she wanted to be left alone. However, this is not the same as refusing the kind of assistance she would have gotten at a hospital. Rape victims sometimes avoid contact with the police because they fear, reasonably or unreasonably, being disbelieved, forced to confront their attacker, and/or made to immediately relate and relive the event in great detail.

**12.** The Ninth Circuit decided *McGuckin* and therein fleshed out its standard for determining

"deliberate indifference" on August 24, 1992, five months before the incident at issue in this case. While the court does not find that *McGuckin* itself clearly established a detainee's right to medical care, that right having already been established by the cases cited in the text, the court does attribute the knowledge of *McGuckin* to defendants for the purpose of determining their immunity. *See Federal Deposit Ins. Corp. v. Henderson,* 940 F.2d 465, 477 (9th Cir.1991).

## IV. Eighth and Ninth Amendments

Plaintiff does not respond to defendants' motion regarding plaintiff's claims under the Eighth and Ninth Amendments. Because plaintiff was not convicted, any claims under the Eighth Amendment would properly arise under the due process clause of the Fourteenth Amendment, as discussed in the section on police procedures above. Plaintiff states no claim under the Ninth Amendment.

### CONCLUSION

For the reasons stated above, the court GRANTS summary judgment to the CCH and to Defendants Flynn and Noguchi on all claims arising from alleged constitutional violations, except for those claims against Defendants Flynn and Noguchi in their individual capacities arising from violation of plaintiff's due process right to medical care while in custody under the Fourteenth Amendment. As to those claims, the court DENIES summary judgment.

IT IS SO ORDERED.

### ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION BUT ORDERING ENTRY OF SEPARATE JUDGMENT FOR PURPOSES OF IMMEDIATE APPEAL

Pursuant to Fed.R.Civ.P. 7(b) and 60(b)(6) and Local Rule 220–10(c), Defendants Cornelius Flynn, Rodney Noguchi and City and County of Honolulu move for reconsideration of this court's Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment. After reviewing the motion and the supporting and opposing memoranda, the court DENIES the motion for Reconsideration but orders a Separate Judgment entered for purposes of immediate appeal of the court's Order should any party desire to pursue an appeal.

### BACKGROUND

On December 6, 1994, this court issued an Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment (the "Order"). In the section pertinent to the present motion, the court found that a genuine issue of material fact concerning the facts available to Defendants Flynn and Noguchi at the time of their arrest and detention of plaintiff precluded the granting of qualified immunity on the issue of a due process violation based on these defendants' deliberate indifference to plaintiff's serious medical needs. Specifically, the court found that the plaintiff and defendants disputed whether she told the officers she had been raped. This court held that, given the other undisputed circumstances of this case, if plaintiff told the officers she had been raped, their subsequent actions would constitute the violation of their clearly established duty not to remain deliberately indifferent to plaintiff's serious medical needs.

Individual Defendant Officers Flynn and Noguchi ("defendants" or "officers"), as well as the City and County of Honolulu ("CCH"), now move for reconsideration of this court's Order. The Order granted summary judgment on all claims against the CCH, and therefore this defendant lacks standing to bring this motion. In addition to moving for reconsideration, defendants announce their intention to seek immediate appeal of this court's Order.

### STANDARD OF REVIEW OF MOTIONS FOR RECONSIDERATION

■ The disposition of a motion for reconsideration is within the discretion of the district court and will not be reversed absent an abuse of discretion. *Plotkin v. Pacific Tel. & Tel. Co.*, 688 F.2d 1291, 1292 (9th Cir.1982). There is a compelling interest in the finality of judgments which should not be "lightly disregarded." *Rodgers v. Watt*, 722 F.2d 456, 459 (9th Cir.1983).

■ It is well settled in the Ninth Circuit that a successful motion for reconsideration must accomplish two goals. First, a motion for reconsideration must demonstrate some reason why the court should reconsider its prior decision. Second, a motion for reconsideration must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. *Great Hawaiian Financial Corp. v. Aiu*, 116 F.R.D. 612, 616 (D.Hawaii 1987) (citations omitted). Courts have established only three grounds justifying reconsideration: (1) an in-

tervening change in controlling law; (2) the discovery of new evidence not previously available; and (3) the need to correct clear or manifest error in law or fact, to prevent manifest injustice. *Id.* The District of Hawaii has implemented these standards in Local Rule 220–10.

## DISCUSSION

### I. The Alleged Manifest Error of Law

 It is true that "permitting damages suits against government officials can entail substantial social costs, including the risk that the fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton,* 483 U.S. 635, 637–39, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). In balancing this fact against the remedial purpose of section 1983, the Court has created the "clearly established" test. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In *Anderson v. Creighton,* the court reasoned that operation of the test "depends substantially upon the level of generality at which the relevant 'legal rule' is to be defined." 483 U.S. at 637–41, 107 S.Ct. at 3038–39. While the invocation of a generalized and certainly established right to due process, for example, does not present sufficient particularity, neither must "the very action in question have previously been held unlawful." *Id.* at 640, 107 S.Ct. at 3039. The Court framed the test that strikes the balance and sets the level of generality, using these words: "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.*

 This test maps out a certain segment on the continuum between the general right and the specific facts at hand. It does not pinpoint one place where all rights must rest in order to be clearly established. In this case, the court cannot conceive of a setting other than an action for damages where the right of an arrested rape victim to medical treatment would arise. For example, the defendants' conduct would not result in the exclusion of any evidence against the plaintiff. The unique facts of this case, as described in the court's Order, demonstrate

why such circumstances do not arise every day. In fact, a court could hardly confront such circumstances in another context. Therefore, the court sees this case as a prime example of the other factor in the treatment of the test in *Anderson v. Creighton:* "When government officials abuse their offices, 'action for damages may offer the only *realistic* avenue for vindication of constitutional guarantees.'" *Anderson v. Creighton,* 483 U.S. at 639–41, 107 S.Ct. at 3039 (1987) (quoting *Harlow v. Fitzgerald,* 457 U.S. at 814, 102 S.Ct. at 2736).

In this context, an action for damages may not merely be the only avenue for vindication of constitutional guarantees; it may be the only forum in which those guarantees whose parameters are already firmly established can be applied to certain original factual settings. To hold otherwise would stunt the growth by application of the right at issue. This is one of those unique cases where the fullest development of the constitutional guarantee at issue depends in part on the availability of the remedy sought by the plaintiff. The court acknowledges that this is not the *most* firmly established of rights. In the segment of the continuum from the general right to the particular case, it certainly leans towards the general. However, its contours, if not its exact portrait, have been sufficiently established so that a reasonable police officer would know that he or she is acting unlawfully by remaining deliberately indifferent to the needs of a detainee.

In its Order, this court described the clear contours of the right. First, the Eighth Amendment mandates that officials not remain deliberately indifferent to the serious medical needs of prisoners. *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). Second, this mandate has been applied through the due process clause as a *minimum* protection for pretrial detainees, who, not having been convicted, do not fall under the Eighth Amendment and arguably deserve more than its protection against "punishment." *Jones v. Johnson,* 781 F.2d 769, 771 (9th Cir.1986). Third, this requirement has repeatedly been held to apply to psychological as well as medical needs. *Hoptowit v. Ray,* 682 F.2d 1237, 1253 (9th

Cir.1982); *Cabrales v. County of Los Angeles,* 864 F.2d 1454, 1461 (9th Cir.1988), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1838, 108 L.Ed.2d 966 (1990). Therefore, there is a clearly established duty of officials not to remain deliberately indifferent to the serious needs for psychological and medical treatment of pretrial detainees.[1]

In sum, defendants are correct that the qualified immunity standard requires more than the firm establishment of a generalized right. However, they are incorrect in citing to one paragraph of this court's Order describing the specific problems presented where police confront a rape victim, terming that paragraph the description of the right, and then triumphantly pronouncing that the court cited to no authority and therefore did not engage in the required inquiry into the established nature of the right. Defendants ignore the section of this court's order, summarized above, that discusses the binding case law setting the parameters for police treatment of pretrial detainees.

■ Further, contrary to defendant's assertion, the test for deliberate indifference at the time of the incident in this case did not require "criminal recklessness." *Cf. Farmer v. Brennan,* — U.S. —, —, 114 S.Ct. 1970, 1978, 128 L.Ed.2d 811 (1994). First, the Supreme Court decided *Farmer* after the incident at issue. Second, and more importantly, *Farmer* interprets the Eighth Amendment test, which at best is the floor and not the ceiling of protection to be afforded to pretrial detainees.

A reasonable officer treating the plaintiff as the defendants did would have known that he or she was in a dangerous position. In this case, the court believes that some apprehension of personal liability for this act may have made the officers think twice before taking an obviously hysterical rape victim to the holding cell. Defendants' complaints that this court has placed the police in an untenable position by presenting them with a Hobson's choice between violating the right to refuse medical care and violating the "right to medical care" are unfounded. The plaintiff in this case never refused medical care. She simply stated that she did not want the assistance of the officers. If she had refused the attention of medical professionals, her refusal would have absolved the officers from responsibility. But this is not what occurred. Plaintiff was not offered medical assistance; she was arrested and placed in a holding cell. As indicated above, it is well established that an arrestee is entitled to prompt medical attention.

Defendants' protestations regarding the treatment of grief stricken family members and mentally ill persons are similarly unfounded. First, they ignore the potentially hidden physical injuries of rape victims. "The court is unwilling to intone the old cliche by requiring 'signs of a struggle' in order to compel a finding of medical necessity." Order, at 21. Second, they imply that this court will not allow the officers to make judgments in the field regarding medical need. The court does not seek to second guess the officers; it merely seeks to impose upon them the well established standard of deliberate indifference. Third, the defendants ignore the possibility that, on a given set of facts, there may indeed be a manifest and obvious need to seek psychiatric assistance for a severely traumatized individual or an individual with a mental disease. Finally, defendants complain that the police may have to "stop investigations" or delay booking in order to deal with serious medical needs. Police already face this difficulty when they arrest injured parties. They conduct investigations and interviews in hospitals. They book arrestees when they can. The court cannot understand how, given a manifest need, even for emergency psychiatric treatment, these concerns could justify ignoring such a need and throwing the arrestee into a holding cell.

In the end, defendants cannot dispute that the serious psychological and medical needs

---

1. For an example of this clearly established right in application, see *Arnold v. Lewis,* 803 F.Supp. 246 (D.Ariz.1992), where a district court found that the practice of placing a schizophrenic inmate in lock down constituted deliberate indiffer- ence. "Although plaintiff should have been seen and evaluated by a psychiatrist immediately after [being] locked down, this was never done." 803 F.Supp. at 257.

of a rape victim may remain hidden from police officers. If plaintiff told the officers she had been raped, it should have been apparent to these officers that their action of detaining plaintiff in a cell without seeking medical care was unlawful. This is particularly true where it is undisputed that the plaintiff was disoriented and at times hysterical. If the officers had any doubt about the propriety of their actions, they need only have looked to the policy of their own Department on the issue.

## II. Immediate Appeal

■■■ Defendants' Motion for Reconsideration states that the defendants intend to seek immediate appeal of the denial of summary judgment. In *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir.1993), the Ninth Circuit held that a dispute as to "the facts and circumstances within an officer's knowledge" is a question of fact for the jury. The court in *Act Up!* held that the determination of whether those facts support an objective belief that probable cause or reasonable suspicion existed present a question of law to be resolved on summary judgment. *Id.* at 873. Here, there exists a question regarding the facts and circumstances within the officers' knowledge at the time they arrested the plaintiff and determined not to seek medical treatment—namely, whether plaintiff told the officers she had been raped. There also exists a question of law regarding the clearly established nature of the right at issue. In its Order, this court based its denial on the existence of the factual issue. However, the "materiality" of this issue of fact was based on the finding of the clearly established right, which presents an immediately appealable question of law.

While an issue of fact does exist, the court agrees with defendants that it is not the type of factual issue that should preclude the immediate appealability of this court's order. An appealable interlocutory decision must satisfy the test set forth in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Under *Cohen*, a decision of a district court is immediately appealable if it falls within "that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.* The Supreme Court found this test satisfied by determinations of qualified immunity, stating in *Mitchell v. Forsyth*:

> [T]he trial judge may rule that only if the facts are as asserted by the plaintiff, the defendant is not immune. At trial, the plaintiff may not succeed in proving his version of the facts, and the defendant may thus escape liability. Even so, the court's denial of summary judgment finally and conclusively determines the defendant's claim of right not to *stand trial* on the plaintiff's allegations, and because '[t]here are simply no further steps that can be taken in the District Court to avoid the trial the defendant maintains is barred,' it is apparent that *Cohen*'s threshold requirement of a fully consummated decision is satisfied' in such a case.

*Mitchell v. Forsyth*, 472 U.S. 511, 527, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985) (quoting *Abney v. United States*, 431 U.S. 651, 659, 97 S.Ct. 2034, 2040, 52 L.Ed.2d 651 (1977)).

While the court's Order did not finally and conclusively determine defendants' right to qualified immunity, it did decide a question of law separable on appeal. Applying the above language in *Mitchell* to this court's Order, the court finds two issues: (1) the clearly established nature of the right, and (2) the existence of an issue of fact precluding the determination of qualified immunity. The first issue may be separated from the merits and immediately appealed. *See Duran v. City of Douglas, Ariz.*, 904 F.2d 1372, 1375 (9th Cir.1990) (citing *Mitchell v. Forsyth*, 472 U.S. at 529 n. 9, 105 S.Ct. at 2816 n. 9) (so long as the issue on appeal "is a purely legal one," ie, whether the facts alleged by the plaintiff support a claim of violation of a clearly established constitutional right, an immediate appeal is required).

As this court noted in its Order, there are questions of fact that prevent the immediate appeal of a denial of qualified immunity.

These questions are so "inextricably bound up with the underlying claim" and unrelated to the qualified immunity issue that they can result in a denial of qualified immunity on summary judgment that is not immediately appealable. *See Velasquez v. Senko*, 813 F.2d 1509, 1511 (9th Cir.1987) (in reviewing the denial of a motion to dismiss or for summary judgment at an early stage in the litigation, question of whether the defendants were even present during the alleged constitutional violations was "inextricably bound up in the underlying claim" and was "not automatically transformed into a qualified immunity claim").[2] However, this case does not present one of those factual questions. Thus, reading the literal language of *Mitchell v. Forsyth*, this court's Order is immediately appealable "to the extent it turns on an issue of law." *Id.* at 529–30, 105 S.Ct. at 2817.

The court believes that an immediate appeal is particularly necessary in this case, where the defendants so vehemently contest the existence of a right that the court finds to be important and sufficiently firmly established so that a reasonable officer would not have done what plaintiff alleges these officers did. Because these officers should not stand trial if there is no firmly established right and because this court believes so strongly this right is firmly established, the court here applies an excess of caution in this case in supporting the immediate appeal of its Order.

Accordingly, in order to remove any doubt, the court directs the Clerk of Court to enter a separate judgment as to the defendants' claim of qualified immunity pursuant to Rule 58 for the limited purpose of effecting defendants' immediate appeal of this Order. Fed. R.Civ.P. 58. However, this judgment shall not be construed to foreclose the factual issue concerning the facts within defendants' knowledge at the time of the arrest and detention of the plaintiff.

*CONCLUSION*

For the reasons stated above, the court DENIES the defendants' Motion for Reconsideration, but orders the Clerk of Court to enter a judgment permitting the immediate appeal of this court's determination of clearly established nature of plaintiff's due process right.

IT IS SO ORDERED.

---

**2.** The court notes that, given the force of *Mitchell*'s requirement of immediate appeals from denials of qualified immunity, even in *Velasquez* the Ninth Circuit was careful to state in a footnote that "we need not decide whether denial of a summary judgment motion based on defendant's noninvolvement made after discovery is complete would present a properly appealable legal issue." *Id.* at 1511 n. 3.